## S. M. VAUGHAN v. DR. A. A. OLIVER.

Western Section. June. 4, 1926.

Certiorari denied by Supreme Court, December 18, 1926.

1. **Physicians and Surgeons.** A physician and surgeon is not required to use the highest degree of skill and scientific knowledge in his profession.

The law does not require of a physician and surgeon the highest degree of skill and scientific knowledge of his profession, but only such reasonable degree as will enable him safely and discreetly to discharge duties he assumes.

2. **Trial. Instructions.** Instruction defining degree of skill required of physician and surgeon approved.

An instruction which told the jury that a doctor and surgeon is required to have such an amount of medical and surgical learning and skill as will enable him to discharge with reasonable skill the duties incumbent upon him in his profession, held to be a proper instruction.

3. **Physicians and Surgeons. Evidence. Evidence held sufficient to show doctor was not negligent.**

In an action to recover damages for injuries alleged to have been caused by an X-ray burn where doctors and surgeons familiar with the use of X-ray machine testified that the treatment was properly administered, held sufficient evidence to justify a verdict for the defendant.

4. **Evidence. Presumption. Where the evidence showed that a party procured medicine the presumption will be that it was used.**

Where the evidence showed that a party procured medicine from a doctor and then testified that he did not remember whether he had used it or not, held that it will be presumed that having bought the medicine it was used.

5. **Evidence. Expert Testimony. When a case involves a highly specialized art concerning which laymen can have no knowledge, the court and jury must be governed by expert testimony.**

In cases which are not solely dependent upon expert testimony, but in which a layman may also have knowledge, the jury is not required to rely upon expert testimony, but in those cases involving a highly specialized art concerning which a layman has no knowledge at all, the court and jury must depend upon expert testimony and if the expert testimony shows no want of skill or attention it is improper to submit the question of negligence to the jury.

6. **Physicians and Surgeons. A physician does not guarantee the cure of his patient.**

A physician is required to use only reasonable care and diligence in the exercise of his skill and the application of his learning and to act according to his best judgment.

Appeal in Error from Circuit Court, of Henry County; Hon. Thos. E. Harwood, Judge.

Affirmed.

Lewis & Rhodes, of Paris, for plaintiff in error.

Dudley Porter, of Paris, for defendant in error.

OWEN, J. S. M. Vaughan, a citizen of Henry county and a barber by trade, sued Dr. A. A. Oliver, a practicing physician of Paris, Tennessee, for damages for malpractice. The defendant pleaded not guilty. The cause was submitted to the court and a jury. Numerous witnesses testified and after the argument of counsel and the charge of the court the jury returned a verdict in favor of the defendant. Plaintiff filed a motion for a new trial, which was overruled, prayed and was granted appeal to this court, perfected same, had a proper bill of exceptions signed and has assigned six errors in this court.

The first assignment is there is no evidence to support the verdict.

The second is the verdict is against the preponderance of the evidence. This assignment is overruled because this is an appellate court and does not weigh the evidence to ascertain where the preponderance lies.

The third and fourth assignments of error relate to certain evidence that was excepted to by the plaintiff.

The fifth and sixth assignments·insist that the court erred in charging two special requests, known as the 8th and 5th special requests, and they are as follows:

"I further charge you, gentlemen of the jury, that a physician or surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible; he is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing, practicing in similar localities; and it is his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning, and to act according to his best judgment."

The court erred in charging the 5th special request of the defendant, which is as follows:

"I further charge you, gentlemen of the jury, that should you find from the evidence that Dr. A. A. Oliver was a competent operator of an X-ray machine, and that in treating the patient for weeping eczema, he used an X-ray dosage or formula approved by his profession in the treatment of weeping eczema, and that he administered the same with reasonable and ordinary skill, and in accordance with the ordinary skill of the profession,.and that in treating the patient, he got an unusual skin reaction or burn of the patient, but that in the exercise of his honest judgment and discretion, the dosage and the areas treated were, in his judgment, necessary to the cure of the patient, then I charge you that he would not be liable, whether he showed bad judgment or not."

We will state the contentions or theories of the respective parties as was properly stated by the court to the jury, as follows:

"In said declaration, it is averred that May, 1925, the plaintiff was afflicted with a skin disease known as eczema, located at or near the lower end of the spinal column, covering an area of about three inches, and that he employed the defendant, a physician and surgeon, and owner and operator of an X-ray machine, to diagnose and treat him for said ailment; that the defendant held himself out as prepared and competent to treat said disease, and agreed and undertook to treat him for such; that the treatment administered by defendant consisted in the exposure of the said affected portion of his body to the light and rays of an X-ray machine for three or four times at intervals of a few days; that said treatments were too long, and given too close together, the last treatment being for fifteen minutes, and that said treatments were given without any protection for the normal skin around the diseased area, nor were said rays focused on the diseased area, but allowed to spray as well over the region near or contiguous to said diseased area; that in not focusing the X-rays on the diseased area, and in allowing the rays to spray over the region around the affected part; and in not using localizers for the rays;

in giving said treatments for too long a time and too often, and in not filtering said rays, were each and all acts and omissions of carelessness, neglectfulness and unskillfulness in administering said treatments, and that by reason of the careless, negligent and unskillful manipulation of said X-ray machine, and negligent, unskillful treatment, plaintiff was severely burned in a circular area of some twelve inches in diameter, involving the lower part of the spine, buttocks on both sides, the posterior portion of the scrotum, down back part of his legs and inner portions of his thighs and his ——————, and from which he suffered great physical and mental pain and anguish, loss of time, and has incurred great expense for medical treatment and hospital bills, and is permanently injured.''

The defendant has pleaded not guilty and that he did not contract as the plaintiff alleged in his declaration, and that he does not owe the plaintiff anything. The plaintiff has joined issue on these several pleas. ''To entitle the plaintiff to recover, he is required to show by a preponderance of the proof that he employed the defendant to diagnose and treat him as averred in his declaration, and that defendant agreed and undertook to do so, and that defendant was unskillful in his treatment, or was guilty of some one or more of the acts of negligence averred in said declaration, and that in consequence of such negligent and unskillful treatment, plaintiff was damaged and injured as averred in said declaration, or in some one of the counts thereof. If these propositions of facts are so shown, the plaintiff would be entitled to recover some damages; otherwise, you will return a verdict for the defendant.

''I further instruct you that any person who assumes to be qualified for the exercise of any profession, art or vocation, is responsible for any damage which may result to those who may employ him for the want or lack of such necessary and proper knowledge, skill and science which such profession demands. A person who enters upon the medical or surgical profession for the treatment of diseases, and solicits business, is required to have such an amount of medical and surgical learning and skill as will enable him to discharge with reasonable skill and ability the duties incumbent on him in his profession. If, for want of such knowledge or skill, or a proper degree of industry, diligence and attention to the business intrusted to him, his patient sustains injury, he is responsible in damages. He impliedly contracts with those who employ him, and whom he treats, that he has such skill, science and information as will enable him properly and judiciously to perform the duties of his calling. If he should be deficient in these respects, he violates his contract, and may be made to account in damages for any malpractice by which those who employ him sustain injury.

"The law, however, does not require of a physician and surgeon the highest degree of skill and scientific knowledge in his profession, but only such reasonable degree as will enable him safely and discreetly to discharge the duties he assumes. The failure of a course of treatment, while a circumstance which may be looked to with the other facts in the case, is not by any means conclusive of that want of profession, skill or want of diligence and attention in treatment.

"Physicians are required to possess reasonable skill for doing that which they undertake, and if injury results to the patient by reason of the lack of such skill, or because of want of diligence and care in the operation and treatment, the physician is liable for such damages as result from his lack of such skill, or for his negligence, or both, if such want of skill or negligence in treatment is shown."

Briefly stated, the plaintiff testified that he had eczema in his feet. He had the defendant to treat his feet with an X-ray machine. His feet were cured. The defendant then treated the plaintiff for an abscess on his neck and that was cured. The plaintiff then was seized with eczema on his buttocks and privates, stated by the medical witnesses as being both anterior and posterior, that the eczema was what is known as weeping eczema. It would run some mucous one day and be dry next day, forming little scabs, that it reached from plaintiff's naval in front down on his thights and privates and on his buttocks and into his rectum. About the first of April, 1925, he applied to the defendant to treat him for the eczema on that part of his body which we have pust mentioned. The defendant applied his X-ray machine and it is the plaintiff's insistence that the last treatment about the 22d of May, 1925, the defendant was negligent in letting the X-rays be focused too long on plaintiff's rectum and plaintiff was seriously burned, that all the hair was burnt off his buttocks, and the hair was also burnt off his privates. There is proof to show by doctors who examined the plaintiff on the day of the trial that the hair has returned and that the hair would not have returned if it had been a serious burn. Plaintiff also testified that his fingernails came off from being burnt by the X-ray machine—that he used his hands in holding open his buttocks while the X-ray was being applied at the last treatment, and that the defendant negligently let the X-rays remain too long, and the machine was in too close proximity to plaintiff's body. The plaintiff was caused to lie in bed for several weeks and had to lie on his stomach. He called in Drs. Burus and McSwain to treat him after he had received his burn. Dr. McSwain testified as to plaintiff's condition that plaintiff was suffering from a X-ray burn. Dr. Burus did not testify. There was introduced over plaintiff's protest a prescription which Dr. Burus wrote on May 22nd, which was the day following the last X-ray treatment administered by defendant. This prescription was filled by G. W. Fisher,

pharmacist of Paris, Tennessee, for the plaintiff, and this prescription contained sulphur, balsam peru, powdered chalk and vaseline, with directions to apply locally night and morning. The proof shows that balsam peru is an irritant and would irritate the eczema. There is also proof to show that the plaintiff had a case of gonorrhea. The plaintiff admitted that he had had this gonorrhea a few months before he had the eczema, but insisted that he had been cured. There is proof tending to show that you are not cured of this venereal disease, gonorrhea, and that a gonorrhea germ communicated and mixed with the eczema germ would cause a mixed infection, and there is proof by Dr. W. S. Lawrence, a well-known expert in the handling of X-ray machines, of Memphis, Tennessee, and who has had many years of experience and who has treated many hundreds of cases of eczema with the X-ray, and who examined plaintiff at the trial, that plaintiff's burns were not serious and that they could have been caused by disease or by drugs, that is, using the irritant salve, balsam peru and sulphur, or by the mixed infection of eczema and gonorrhea germs.

Numerous witnesses testified as to the good character of the defendant, for truth and veracity, and also as to his being a skilled and competent and careful physician and one who knew how to properly apply the X-ray treatment. Dr. Oliver has had X-ray training in the University of Nashville and in Cincinnati. He had owned and operated an X-ray machine about four years. Dr. Oliver testified that in giving X-ray treatments he followed the instructions set out by the U. S. Army Manual. He further testified that plaintiff informed defendant at the time defendant began the treatment with X-ray that "this is driving me crazy and I itch and scratch all the time, and I cannot stand it." Dr. Oliver did not know that plaintiff had recently been treated for gonorrhea. Dr. Oliver testified that he gave the plaintiff an X-ray dose composed of the following factors: five milliamperes, five to six inch spark gap, skin distance twenty-five to thirty inches from target, time of exposure six minutes, lead cone used as localizer. The doctor testified that he gave this same dose, except the last dose the exposure was from fifteen to twenty minutes, but not over six or eight minutes on any one surface, that he was receiving both posterior and anterior treatments. Dr. Lawrence of Memphis, Dr. Webb, a well-known operator of the X-ray of Jackson, Tennessee, and other X-ray experts, all testified that this was not an improper dose, and that there was no negligence in the manner in which Dr. Oliver treated the plaintiff if the treatment was given as Dr. Oliver had testified. We are of the opinion that there is evidence to sustain the verdict of the jury in behalf of the defendant.

It is shown that eczema will cause the fingernails to come off as plaintiff's fingernails came off his hands, that eczema destroys finger-

nails and hair. The jury was warranted in finding that plaintiff's burns came from a mixed infection, or from using the balsam peru as a salve, which would irritate eczema. It results that the first assignment of error is overruled.

There is also proof by witnesses who examined the plaintiff that he was not suffering from X-ray burns.

The two assignments of error in regard to incompetent evidence complain of the action of the court in permitting the witness Fisher, who was a pharmacist, to testify that he had filled the prescription for plaintiff that was written by Dr. Burus calling for the balsam peru, and which was written the day after plaintiff received his last X-ray treatment from defendant. Defendant tried to place Dr. Burus on the stand and it appears that the Doctor told the sheriff he was busy, and it was stated to the court by counsel for the defendant that Dr. Burus was subpeonaed by the plaintiff, but the plaintiff did not examine Dr. Burus. The plaintiff testified he did not know whether he used the medicine Dr. Burus prescribed or not, but we are of the opinion that the jury had a right to infer, and it was a reasonable inference that if the plaintiff procured the prescription from the doctor which he had substituted for the defendant and had had the prescription filled, that he applied the ointment as directed. He wanted something to stop the burning and itching, and we are of the opinion that this was competent evidence to introduce this prescription, and the third assignment of error is overruled.

The fourth assignment complains of the expert testimony which was introduced by the defendant. The court properly instructed the jury how to weigh this expert evidence, and the use of the X-ray is comparatively new to the medical profession. The proper use of it is wholly unknown to a layman, and as to whether or not Dr. Oliver used the X-ray machine in a skillful manner or a negligent manner would have to be determined by expert evidence gained from witnesses who are familiar with the operation and use of the X-ray machine.

"The following is an excerpt from the opinion of Judge Taft in the case of Ewing v. Goode, Fed. Rep., Vol. 78, page 444:

"In many cases, expert evidence, though all tending one way, is not conclusive upon the court and jury, but the latter, as men of affairs, may draw their own inferences from the facts, and reject or accept the statement of experts; but in such cases, or where the subject of discussion is on the borderline between the domain of general and expert knowledge, as, for instance, where the value of land is involved, or where the value of professional services is in dispute, there the mode of reaching conclusions from the facts when stated

is not so different from the inferences of common knowledge that expert testimony can be anything more than a mere guide. But when a case concerns the highly specialized art of treating an eye for a cataract, or the mysterious and dread disease of glaucoma, with respect to which laymen can have no knowledge at all, the court and the jury must be dependent upon expert evidence. There can be no other guide; and where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury."

It results that the fourth assignment of error is overruled.

As to the fifth and sixth assignments of error complaining of certain special requests granted, which requests were offered by the defendant, we find no special requests offered by either party in the bill of exceptions. However, we find the two excerpts complained of in the general charge, and we are of the opinion that it was not error in the court charging the jury in the manner complained of.

"In the case of Burnett v. Layman, 6 Thompson, page 328, the court held that:

" 'A physician does not guarantee the cure of his patients. Presuming a careful diagnosis, a physician is not liable for damages resulting from an honest mistake in determining upon the character of treatment to be administered or in determining upon the necessity of an operation. These things are mere matters of judgment upon which an action cannot ordinarily be predicated.'

" 'A physician or surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible. He is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his possession in good standing, practicing in similar localities; and it is his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning, and to act according to his best judgment.' " Cyclopedia of Law & Procedure, Vol. 30, page 1570; McDonald v. Harris, 131 Ala., page 359.

It results that all the assignments of error are overruled and disallowed. The judgment of the lower court is affirmed.

The plaintiff and surety on appeal bond will pay the costs of the cause, including the cost of the appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.