GORDON'S TRANSPORTS, INC., Plaintiff In Error,
v. MRS. MARY A. BAILEY, Defendant In Error.—294
S. W. (2d) 313.

Western Section at Jackson. February 22, 1956.

Rehearing denied March 16, 1956.

Petition for Certiorari denied by Supreme Court, September 3, 1956.
Petition to Rehear Certiorari denied by Supreme Court, October 5,
1956.

Glenn Elliott and James W. Wrape, Memphis, for plaintiff in error.

John S. Porter and Thomas C. Rhem, Memphis, for defendant in error.

BEJACH, J. This cause involves an appeal in the nature of a writ of error, by Gordon's Transports, Inc., from a judgment against it in the sum of $20,000 rendered by the Circuit Court of Shelby County, Tennessee. There had been two previous trials of this same cause, both of which resulted in mistrials, but wayside bills of exception seem to have been filed, preserving the testimony in each of the former trials. During the second trial, the defendant in error having been remarried, her declaration was amended to change the name in which she sues from Mary A. Bailey to Mary A. Nunnally. The suit was originally

brought by Mrs. Mary A. Bailey as administratrix of the estate of Frank W. Bailey, deceased, her former husband, on account of his death which was the result of a collision on U. S. Highway 51, near Richview in the State of Illinois,—which collision occurred at about 5:30 A. M., July 30, 1952. The suit, as originally brought, was also against Herman E. Washburn, the driver of plaintiff-in-error's truck or trailer-tractor combination; and, as originally brought, the suit also sought recovery of property damages in the amount of $1,750. During one of the two former trials, however, a nonsuit was taken as to the property damage claim. A nonsuit was also taken as to Herman E. Washburn.

For convenience, the parties will be styled as in the lower court, plaintiff and defendant, plaintiff-in-error, here having been the defendant in the lower court, and defendant-in-error having been the plaintiff below.

Plaintiff's declaration alleges her qualification as administratrix of her deceased husband, Frank W. Bailey, and alleges that he died as a result of a collision between an automobile being driven by him and a motor vehicle of the defendant, driven by one Herman E. Washburn. Plaintiff's declaration pleads the Illinois wrongful death statute, and alleges that the death of her husband was occasioned by defendant's negligence in operating its equipment in a careless and reckless manner, upon the wrong side of the highway, failing to keep to the right side of the highway, operating at an excessive speed, not having its vehicle under proper control, not keeping a proper lookout ahead, and in failing to change direction or stop when the perilous situation of plaintiff's husband became apparent, as a result of which a collision took place in which plaintiff's said husband was immediately

killed. The declaration pleads the statutes of the State of Illinois relative to reckless driving, speed restrictions, driving on the right side of a roadway, passing vehicles proceeding in opposite directions, and regulating the equipment of motor vehicles, which statutes she avers were violated by defendant with resultant death of her husband and damage to her in the amount of $20,000.

Defendant filed pleas of not guilty and contributory negligence. After an order of court requiring it so to do, it also filed special pleas setting forth its defenses, in which special pleas every allegation of common law or statutory negligence alleged in the declaration was denied. Defendant admitted that the accident referred to in the declaration took place at the time and place alleged, and that at that time and place, its equipment was being operated as a common carrier of freight by motor vehicle pursuant to authority of the Interstate Commerce Commission, and averred that at that time and place, its equipment was in perfect mechanical condition and being operated by an experienced driver in a careful, cautious and prudent manner. Defendant's special pleas, filed in the form of an answer, averred further that at the time and place of the accident referred to in the declaration, its agent and servant was operating its equipment in a northerly direction on U. S. Highway 51 N., on the right or easterly side of said highway, at a point approximately one and one-tenth miles north of Richview, Illinois, carefully, cautiously, upon the right hand side of the road, at a slow and reasonable rate of speed, and with due regard to the rights and safety of all persons in lawful use of said highway. Said answer averred further that at the time and place of collision with the automobile of plaintiff's intestate his said auto-

mobile was being operated in a southerly direction upon said highway, being driven by said Frank W. Bailey, deceased, and that at a point, where for south bound traffic there is a curve in the road from north to west, which placed Bailey's automobile, if operated on the right side of said highway, on the inside of said curve. It averred that Bailey was operating his automobile at a high, dangerous, and reckless rate of speed, under the circumstances then existing, and that he drove same suddenly and immediately in front of the motor vehicle equipment being operated by defendant in a northerly direction upon said highway, either losing control of same or driving same in such manner that it veered across the center of said highway to the left hand side thereof, insofar as Bailey was concerned, crashing same into the left front bumper and front wheel of defendant's motor vehicle, with the result that both vehicles were pulled across the highway and into an embankment on the westerly side of the highway. It avers that Bailey was operating his automobile without properly adjusted lights and brakes, without keeping a proper lookout ahead, without having the same under control, at a high and dangerous rate of speed, contrary to all laws of the road and statutes enacted by the State of Illinois, and that such acts of said Bailey were acts of negligence which solely and alone caused or proximately contributed to causing the death of said Frank W. Bailey.

By further pleas, the defendant set forth and relied upon the statutes of the State of Illinois, authorizing the Illinois Highway Department of Public Works and Buildings to prescribe speed limits, which make it a misdemeanor for any person to fail to comply with such speed regulations, defining reckless driving, and providing

that operation of a vehicle at a speed greater than is permissible is prima facie evidence of negligence. The defendant further averred in said pleas that the Illinois Department referred to in said statutes had, at the curve upon which the accident here involved occurred, placed traffic control and warning devices indicating the existence of a dangerous curve, establishing a speed limit of 35 miles per hour, and that at said time and place it was raining and the highway was wet, and that the said Frank W. Bailey, in operating his automobile in manner described in the special pleas of defendant, disregarded all speed laws, traffic control devices, warnings and guides, and drove his automobile at a speed in excess of 60 miles per hour, such negligence barring a recovery by plaintiff.

Without having expressly pleaded same, as it did the Illinois statutory law referred to above, defendant also attempted to rely on the Illinois common law applicable to suits of the nature involved in this cause, notified plaintiff's attorneys to that effect, and furnished to plaintiff's attorneys a memorandum of the Illinois decisions establishing and construing such common law. The brief of plaintiff's attorneys filed in this Court denied that such notice was given to them. Whereupon, defendant's attorney undertook to suggest a diminution of the record in this cause, so as to bring up to this Court, as part of the record herein, one or both of the wayside bills of exception filed in the lower court after previous mistrials of this cause,—which wayside bills of exception, it was claimed, would establish that such notice was given to plaintiff's attorneys and that such memorandum of Illinois authorities had been furnished, in compliance with Section 9773.7 of the 1950 Supplement to the Code of Tennessee, now T. C. A. Sec. 24-610, which provides:

"Any party may also present to the trial court any admissible evidence of such laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleading or otherwise."

██ ██ In view of the admission made in open court by plantiff's attorney, that notice of that character had in fact been given and such memorandum of authorities furnished, we think it is unnecessary to grant the suggestion of diminution of the record, or issue any writ of certiorari for the purpose of bringing up said wayside bills of exception. We think this is a proper disposition of the matter, notwithstanding the fact that plaintiff's attorney sought to couple with his said admission, a denial of the conclusions sought to be drawn from that fact by defendant's attorney. The fact being admitted, the conclusions to be drawn from that fact, are, we think, matters for determination by this Court.

██ There is also a suggestion of diminution of the record for the purpose of bringing up to this Court special instructions offered in behalf of defendant at the trial of this cause in the lower court, it being alleged that such special instructions had been filed in the lower court but were not included in the transcript sent to this court. This suggestion of diminution of the record, also, we think, should be denied, because the granting of it could serve no useful purpose. The special instructions, even though filed in the lower court, did not become parts of the technical record; and, unless they were incorporated in the bill of exceptions, same did not become and cannot now become, part of the record in this Court. Ward v. State, 102 Tenn. 724-728, 52 S. W. 996; Rhoton v. Burton,

2 Tenn. App. 164, 171-172; Taylor v. Robertson, 12 Tenn. App. 320, 326. Even though these special requests are copied into defendant's motion for a new trial, and as part of the motion for new trial, are in the transcript before us, that is not sufficient. Hood v. Grooms, 4 Tenn. App. 511, 515; Adamant Stone & Roofing Co. v. Vaughn, 7 Tenn. App. 170; Taylor v. Robertson, 12 Tenn. App. 320, 326.

At the conclusion of all the evidence, defendant's attorney made a motion for a directed verdict which was overruled by the trial judge. The cause was then submitted to the jury which returned a verdict in favor of plaintiff in the sum of $20,000. After a motion for a new trial had been overruled, an appeal in the nature of a writ of error was perfected to this Court.

Since the evidence in this cause is material to the disposition made by this Court, a more detailed statement of the facts and testimony establishing same will now be made.

The accident involved in this suit occurred at approximately 5:30 A.M. on the morning of July 30, 1952 on U. S. Highway 51, a little more than one mile north of Richview, Illinois. The highway runs in essentially a north and south direction, is of concrete construction patched with asphalt, 18 feet wide, and with a center line marked on the highway. At the time of the accident a drizzling rain was falling. For south bound traffic there is a very sharp curve to the right, which curve has been designated by Illinois officials as a dangerous curve and zoned for a speed limit of 35 miles per hour. On the inside or western side of this curve, there was an embankment approximately 8 feet high with bushes 2 or 3 feet high on top of this embankment.

Frank Bailey, a career Navy man, stationed at Great Lakes Naval Training Station in Chicgo, Illinois, was driving a 1950 Pontiac automobile, weighing approximately 4,000 pounds, in a southerly direction, on a trip to visit his family in Memphis. Official papers in his possession establish that he was authorized to leave Great Lakes at 12:01 A.M. on the morning of the accident. The place of accident is approximately 325 miles south of Great Lakes Training Station. Defendant's motor equipment, known and designated as a tractor-trailer unit, was being driven by Herman Washburn, a driver with 25 years driving experience. Said Washburn was originally joined as a defendant along with defendant corporation, but inasmuch as a non suit has been taken as to him, he is not now involved. Washburn was familiar with the dangerous nature of the curve, as appears from his testimony, and had reduced his speed to about 30 miles per hour as he approached the curve. The tractor-trailer unit was approximately 42 feet long, with a gross weight of approximately 52,000 pounds.

According to the testimony of eye witnesses, the Pontiac automobile was driven at a speed of from 60 to 70 miles per hour in a 35 mile per hour speed zone.

The collision between the vehicles took place at a point approximately 10 feet south of the southern end of the curve. The front center of the Pontiac came into contact with the left front wheel and bumper of the tractor-trailer, turning the front wheels of the tractor sharply to the left and locking them in that position. The driver of the tractor was knocked from under the steering wheel and lost control of his equipment. The Pontiac ploughed under the tractor, which continued to move forward at about one-half to two-thirds speed, pushing

the Pontiac along with it in a northwesterly direction across the highway and into the embankment on the western side. Frank Bailey was killed instantly.

There were two eye witnesses to the accident, Herman Washburn, the driver of defendant's tractor, and Sam Peoples. Peoples was standing approximately 150 feet from the point of impact. Both Washburn and Peoples testified that the point of impact was on the eastern side of the highway.

Shortly after the occurrence of the accident, Eric Nordstrom, an independent investigator, and an undertaker by the name of Gerald Galbreath, arrived at the scene of the accident. Within one hour, Captain Lee Lyons of the Illinois Department of Public Safety, arrived. A study of the physical facts at the scene of the accident was made, within minutes after it had occurred, by Washburn, Peoples, Nordstrom, and Galbreath. Subsequently, after Captain Lyons had arrived, a similar study was made by Lyons, Washburn, Nordstrom and Galbreath.

Peoples, Lyons, Washburn and Nordstrom testified that a major portion of the debris from the collision was located on the eastern side of the highway, scattering to the west; and that there was a fresh gouged out mark made by the Pontiac, beginning 12 to 18 inches past the center line of the highway on the east side of same, which gouged out mark ran across the center line of the highway in a westerly direction towards the point where the vehicles came to rest, continuing for a distance of 2½ feet west of the center line of the highway. There was also testimony that plainly visible dual tire marks ran from the eastern side of the highway to the vehicles.

Peoples, Nordstrom, Washburn and Lyons all state that Galbreath was present, that he discussed the physical facts with each of these two groups of four, and that all, including Galbreath, agreed with respect to debris, tire marks, gouge marks, and that the accident took place on the eastern side of the highway. They also testified that, at the scene of the accident as well as at the subsequent inquest, Galbreath told Washburn that he (Washburn) had nothing to worry about, and that it was clear that the accident occurred on his side of the highway.

Galbreath, on the other hand, while he admitted that he was present when the two investigations were made, denied that he agreed to the findings of the two groups of four. He admits that he voiced no disagreement, but denies having seen any debris on the eastern side of the highway. He testified that he saw debris on the western side of the highway, but did not examine it sufficiently to tell of what it was composed. With reference to the gouged out mark, obviously made by the Pontiac, Galbreath testified that it began at the center line, rather than east of the center line. He denied having told Washburn that he had nothing to worry about.

Captain Sam Manning of the Memphis Police Department, introduced as an expert witness by plaintiff, testified that when a heavy vehicle and a light vehicle come together, under circumstances such as were involved in this case, the heavy vehicle never ceases its forward movement, but the vehicles rear up and settle down before the one beneath is mashed into the pavement, and that a vehicle traveling 30 miles per hour will travel 4.4 feet in $\frac{1}{10}$ of a second.

The testimony of Peoples and Washburn that the vehicles involved in this accident moved continuously from east to west after the impact, is undisputed, as is their testimony that the Pontiac was being driven at a speed of from 60 to 70 miles per hour, which is in violation of the Illinois law pleaded in this cause. Likewise, there is no evidence in the record rebutting the presumption of negligence established by reason of violation of the Illinois statutes in question. There is no evidence in the record tending to establish that plaintiff's intestate was not guilty of negligence contributing proximately to the accident here involved, which proof is required by the Illinois common law hereinafter referred to, nor that he was exercising due care and caution immediately prior to said accident, which is also required by Illinois law. Indeed, plaintiff's declaration in this cause does not even allege such freedom from negligence on his part, causing or contributing to the cause of the accident, nor that he was exercising due care and caution immediately prior to the accident.

Defendant, as plaintiff in error in this Court, has filed nine assignments of error. It is not necessary to copy these assignments of error into this opinion, nor to discuss them separately. They raise, as we view them, five questions to be disposed of by this Court. These will be disposed of separately, and the application thereto of the several assignments of error by number will be identified in our discussion.

The first question deals with the refusal of the trial judge to give two special requests presented by defendant.

█ As was pointed out above, these special requests made by defendant, were not incorporated in the bill of exceptions, and hence cannot be considered by this Court. Ward v. State, 102 Tenn. 724, 728, 52 S. W. 996; Rhoton v. Burton, 2 Tenn. App. 164, 171-172; Taylor v. Robertson, 12 Tenn. App. 320, 326; Hood v. Grooms, 4 Tenn. App. 511, 515; Adamant Stone & Roofing Co. v. Vaughn, 7 Tenn. App. 170. The question here involved was presented by defendant's assignments of error, 2 and 3. Said assignments are, accordingly, overruled.

█ The second question, which is presented by defendant's assignment of error number six, is whether or not this cause should be reversed because of the failure on the part of the trial judge, in passing on defendant's motion for a new trial, to exercise his function as the thirteenth juror. The case of McLaughlin v. Broyles, 36 Tenn. App. 391, 255 S. W. (2d) 1020, 1023, is relied on in support of this assignment of error. In that case, it affirmatively appears that the trial judge had failed to weigh the evidence and exercise his function as a thirteenth juror. The language of the decision expressly authorizes a trial judge to overrule a motion for new trial without comment, in which case, it is said that the presumption will be that he did weigh the evidence and exercise his function as the thirteenth juror. In the instant case, there is no affirmative showing that the trial judge failed to weigh the evidence. Assignment of error number six is, accordingly, overruled.

The third question, which is presented by assignment of error number nine, is whether or not the trial judge erred in admitting in evidence certain photographs

alleged to have been taken under the supervision of witness, Galbreath, and which were admitted as Exhibits C, D, and D 1, to his testimony. The objection to these photographs is that they were taken at a different time from the occurrence of the accident involved in this cause, and that they do not correctly reflect the situation existing at the place of the accident.

■ The general rule is that photographs stand on the same footing as diagrams, maps, or models, and rest to some extent on the credibility of the witness introducing them. Little v. Nashville, C. & St. L. Ry. Co., 39 Tenn. App. 99, 281 S. W. (2d) 284, 293.

■ The credibility of witness, Galbreath, was certainly a question for the jury in this cause. Apparently the jury believed his testimony, to the exclusion of a considerable amount of testimony to the contrary. Under the circumstances, we cannot hold that admission in evidence of these photographs by the trial judge constituted reversible error. Even if the admission in evidence of these photographs be treated as error, such error, under the provisions of Section 10,654 of Williams' Code, Sec. 27-117 Tenn. Code Ann., would not justify a reversal. Assignment of error number nine is, accordingly, overruled.

The fourth question which is presented by assignment of error number one, is the dominant, and in our opinion, the controlling question in this law suit. This assignment of error is as follows:

"The trial court erred in treating the Tennessee contributory negligence rule as the law of the case, basing the charge to the jury thereon, and in refusing to apply the law of Illinois."

The law of Illinois, as we gather is from the Illinois decisions cited in defendant's brief in this Court, which Illinois decisions presumably were the same ones contained in the memorandum furnished by defendant's attorney to plaintiff's attorney at one of the former trials of this cause, as was admitted by plaintiff's attorney during the argument in this Court, is that in the absence of wanton or willful misconduct by the defendant it is part of the plaintiff's case to establish that he was free from negligence which either caused or contributed to the accident sued for.

The Illinois law on this subject is stated in West Chicago St. Ry. Co. v. Liderman, 187 Ill. 463, at page 468, 58 N. E. 367, at page 368, 52 L. R. A. 655, of that opinion by Mr. Justice Wilkin of the Illinois Supreme Court, as follows:

"Counsel for appellee, though insisting that the plaintiff below was shown to have been in the exercise of due care for her personal safety at the time of the accident, insists upon the rule of law held in some jurisdictions to apply in such actions 'that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence.' Such has never been the law in this state. Here the rule is: 'Where a party seeks to recover damages for a loss which has been caused by negligence or misconduct he must be able to show that his own negligence or misconduct has not concurred with that of the other party in producing the injury; and the burden of proof is upon the plaintiff

to show not only negligence on the part of the defendant, but also that he exercised proper care and circumspection; or, in other words, that he was not guilty of negligence.' [Aurora Branch] R. R. Co. v. Grimes, 13 Ill. 585; [Indianapolis & St. L.] R. R. Co. v. Evans, 88 Ill. 63; Arbend v. [Terre Haute & Indianapolis] R. R. Co., 111 Ill. 202; [Calumet Iron &] Steel Co. v. Martin, 115 Ill. 358, 3 N. E. 456; [North Chicago Street] Ry. Co. v. Louis, 138 Ill. 9, 27 N. E. 451; [Illinois Cent.] R. R. Co. v. Nowicki, 148 Ill. 29, 35 N. E. 358; and later cases.''

In the case of Carson Pirie Scott & Co. v. Chicago Rys. Co., 309 Ill. 346, at pages 352-353, 141 N. E. 172, 175 of the opinion in that case written for the Supreme Court of Illinois by Mr. Justice Cartwright, the law is stated as follows:

"It is the settled rule of law of this state that one complaining of negligence merely, where there is no willful act or willful or intentional neglect of duty causing an injury, cannot recover if he was guilty of negligence, contributing to the injury complained of. West Chicago St. R. R. Co. v. Liderman, 187 Ill. 463, 58 N. E. 367, 52 L. R. A. 655; Chicago, Wilmington & Vermilion Coal Co. v. Moran, 210 Ill. 9, 71 N. E. 38; Krieger v. Aurora, Elgin & Chicago R. R. Co., 242 Ill. 544, 90 N. E. 266.''

In the case of Engstrom v. Olson, 248 Ill. App. 480, at page 486, Mr. Justice Boggs stated the law, as follows:

"If both parties in an automobile collision are guilty of negligence which contributed to the same, there can be no recovery by either party. Before either party to a collision can recover against the

other, that party must affirmatively prove negligence on the part of the other which proximately contributed to the collision, and due care on his own part just prior to and at the time of the collision.''

In Foreman Trust & Savings Bank v. Chicago Rapid Transit Co., 252 Ill. App. 151, Mr. Justice McSurely stated the law on this subject, as follows:

''It is established by a large number of decisions, without any dissent, that where a party seeks to recover damages he must be able to show that his own negligence has not concurred with that of the other party in producing the injury, and the burden of proof is upon him to show that he was not guilty of negligence contributing to the injury. West Chicago Street R. R. Co. v. Liderman, 187 Ill. 463 [58 N. E. 367, 52 L. R. A. 655]; City of Macon v. Holcomb, 205 Ill. 643 [69 N. E. 79]; Krieger v. Aurora, E. & C. R. Co., 242 Ill. 544 [90 N. E. 266]; Carson Pirie Scott & Co. v. Chicago Rys. Co., 309 Ill. 346 [141 N. E. 172]. The rule is otherwise where the defendant is charged with the wanton and willful infliction of an injury which is not this case.''

If the Illinois law, as announced in the cases referred to above, be applied to the facts developed by the undisputed evidence in the instant case, clearly defendant's motion for a directed verdict should have been granted. Not only did plaintiff in this cause fail to carry the burden of proof as to freedom from negligence required by the Illinois law; but, in addition, she failed completely to rebut the *prima facie* case of negligence on the part of decedent established by the proof that at the time and place of the accident he was exceeding

the speed limit established by the Illinois Highway Department.

In support of its contention that Illinois law, as hereinabove stated, is applicable to the case at bar, defendant cites and relies on the case of East Tennessee V. & G. Railway Co. v. Lewis, 89 Tenn. 235, 14 S. W. 603. The first syllabus of this case is as follows:

"In suits brought in Courts of this State to recover for personal injuries inflicted in another State, the law affecting the merits of the controversy, as declared by the Courts of the latter State, controls when in conflict with the decisions of our own Courts."

The opinion in that case, written by Turney, C. J., is short, and same is quoted, as follows:

"This suit was brought to recover damages for injuries received by an employee in Georgia. The Georgia law governs. There is in the transcript evidence tending to show negligence on the part of the defendant in error at the time of the injury. The court charged the jury: 'If the defendant's negligence was the direct or proximate cause of the injury, the plaintiff can recover, even though the plaintiff may have been at fault, if his fault was less in degree than that of the defendant,' etc. This was error. The rule as laid down in Railway, etc., Co. v. Kenney, 58 Ga. R., 485, is, 'To make prima facie case for recovery, a railroad employe, suing the company for a physical injury resulting from an act in which he participated must prove either that he was not to blame or that the company was. The latter, in reply, may defend successfully by dis-

proving either proposition; that is, by showing that the plaintiff was to blame, or that the company was not. If both were to blame, or if neither was, the plaintiff cannot recover.' The court should have so charged. The rule in Tennessee is not applicable to the case. Reverse and remand.'' East Tennessee V. & G. Railway Co. v. Lewis, 89 Tenn. 235, 236, 141 S. W. 603.

This case has been cited with approval in Whitlow v. Nashville, C. & St. L. Ry. Co., 114 Tenn. 344, 348, 84 S. W. 618, 68 L. R. A. 503; Sullivan v. Farnsworth, 132 Tenn. 691, 699, 179 S. W. 317; Chumley v. Louisville & N. R. R., 5 Tenn. Civ. App. 73, 77, and In re Pennsylvania R. R. Co., 2 Cir. 48 F. (2d) 559, 565. See also, notes in 32 A. L. R. 796 and 73 A. L. R. 960. So far as we can ascertain, it is still a controlling authority in Tennessee Courts.

But, it is argued that in the case of East Tennessee V. & G. Railway Co. v. Lewis, the Georgia law must have been pleaded as a defense. There is nothing in the reported decision to indicate whether or not this was done; but, if such did occur, the case was decided prior to the enactment by Tennessee of the Uniform Judicial Notice of Foreign Law Act, passed by the Tennessee Legislature as Chapter 137, Public Acts of 1943, appearing in Sections 9773.1-9773.7, Williams' Code, Secs. 9973.4-9773.9, 1950 Supplement to the Code of Tennessee, sections 24-607 to 24-612 Tenn. Code Ann. Section 9773.4 of the 1950 Supplement to the Code of Tennessee, now T. C. A. Sec. 24-607, provides:

"Every court of this state shall take judicial notice of the common law and the statutes of every

state, territory and other jurisdiction of the United States.''

The above quoted Section was in full force and effect at the time of the trial of the instant case in the lower court.

The laws of other states of the United States dealing with the subject of plaintiff's own negligence and their effect on the right of recovery, have been applied in this state, among other cases, in Snyder v. Missouri Pac. R. Co., 183 Tenn. 471, 192 S. W. (2d) 1008; Virginia Ave. Coal Co. v. Bailey, 185 Tenn. 242, 205 S. W. (2d) 11; and Rice-Stix Dry Goods Co. v. Self, 20 Tenn. App. 498, 516, 108 S. W. (2d) 132.

Counsel for plaintiff raises three objections to the right of defendant in the instant case to rely on the Illinois law. These objections are:

First, that no notice was given as required by Section 9773.7, 1950 Supplement to the Code of Tennessee.

Second, that the Illinois law here involved, is a matter of procedure as to which the law of Tennessee, being the law of the forum, takes precedence.

Third, that since the defendant, after being required so to do, filed special pleas which did not include any reference to the Illinois law, defendant was, therefore, not entitled to offer any evidence as to the Illinois law, nor have the Court take judicial notice of same.

The admission made by plaintiff's attorney in open court, takes care of the first objection. We have already discussed this in connection with our ruling that it obviated the necessity of granting the suggestion of

diminution of the record, and further discussion is unnecessary.

With reference to the second objection, that the Illinois law in question is procedural only, and that, therefore, the law of Tennessee, as the law of the forum, should have controlled, we think that the Illinois law in question, although procedural in form, is substantive in effect. American Jurisprudence, under the title ''Conflict of Laws'', has this to say on the subject:

''Where the rule of the lex loci, though framed in terms of evidence, presumption, or burden of proof, is such that it goes to the very existence of the contract or the right of the plaintiff to recover, or of the defendant to resist recovery, whether that rule is to be dominated as one of remedy or of substance, the fact is that it affects the substantive rights of the parties and should therefore be applied, notwithstanding a contrary rule of the forum.'' 11 Am. Jur. pages 523-524, Conflict of Laws, Sec. 203.

In Restatement of the Law, under title ''Conflict of Laws'', at Sec. 595, page 710, the following appears:

''Thus if a requirement concerning proof of freedom from fault exists in the law of the place of injury and if such condition is there interpreted as a condition of the cause of action itself, or as affecting the nature or amount of the recovery, the court at the forum will apply the rule of the foreign state. In such a case the remedial and substantive portions of the law are so bound together that the application of the usual procedural rule of the forum would seriously alter the effect of the operative facts under

the law of the appropriate foreign state. If there is no serious interference with the court's legal processes involved, the court will apply the foreign rule as to freedom from fault and the conditions attached by that law thereto.''

An illustration in this text, showing the application of Section 595, quoted above, is on all fours with the facts involved in the instant case. This illustration is as follows:

''(1) A, in the state X, is injured by the alleged negligence of B. A sued B in the state Y. By the law of X, a plaintiff has no cause of action until he has shown that his own negligence did not contribute to his injury. By the law of Y, contributory negligence is an affirmative defense to be pleaded and proved by the defendant. A must show his freedom from contributory negligence.''

For the reasons stated above, we think the Illinois law relied on by the defendant, although procedural in form, is substantive in fact, and should have been applied in the instant case.

The third objection raised by counsel for the plaintiff to the right of defendant to rely on the Illinois law, here involved, is that, because defendant did not plead the Illinois law in question, after being required under the provisions of Section 8767 of the Code of Tennessee, now T. C. A. Sec. 20-921, to plead specially, he should not have been permitted to either prove such law of Illinois, or have the trial court take judicial knowledge of same. This presents a much closer question, in our opinion, than either of the other two objections. Plaintiff's brief cites

and relies on the cases of Provident Life & Accident Insurance Co. v. Prieto, 169 Tenn. 124, 83 S. W. (2d) 251; Creekmore v. Woodard, 192 Tenn. 280, 241 S. W. (2d) 397; Olins v. Shocket, 31 Tenn. App. 346, 215 S. W. (2d) 18, in support of this objection.

The case of Provident Life & Accident Insurance Co. v. Prieto involved a suit on an insurance policy where the defense was that the insured had committed suicide, and, therefore, had not died as the result of an accident. In the opinion of the Supreme Court, the following language appears [169 Tenn. 124, 83 S. W. (2d) 264]:

"It is the object of section 8767, modifying the prior statute, to enable a plaintiff to be forwarned of every matter of defense intended to be relied on by a defendant, and to require a defendant to make explicit all matters of defense which otherwise would be implicit in pleas of the general issue.

"[6-8] Manifestly had the plaintiff invoked this section, and the defendant had failed to plead suicide it could not have introduced evidence in support of the defense, and consequently the issue based on suicide would have disappeared from the case."

Although the above quotation may be treated as dictum, it correctly states the law, as was expressly held in Creekmore v. Woodard, 192 Tenn. 280, 241 S. W. (2d) 397, 398. In this latter case, the plaintiff's declaration alleged various acts of negligence in the driving of the automobile in which Mrs. Creekmore was riding, and alleged that she was driving that automobile at the time, though not its owner. Defendant filed a plea of not guilty to this declaration, but afterwards, being required so to do under provisions of Code Section 8767, she filed special pleas.

At the trial of the cause, on objection by the plaintiff, the trial judge refused to allow Mrs. Creekmore to offer evidence to the effect that she was not driving the car, because she had not plead such defense in her special pleas, filed in accordance with Code Section 8767. Plaintiff recovered a judgment which was affirmed by the Court of Appeals, and, although certiorari was granted by the Supreme Court, the judgment of the Court of Appeals was affirmed. In the Supreme Court's opinion written by Tomlinson, J., the following language appears:

"Implicit in the simple and easily understood words of Code Section 8767 is the fact that when this code section is invoked, the general issue plea, in so far as that suit is concerned, is abolished, and the plea of defendant must set out by certain and express averments and denials the facts relied on as a defense."

Olins v. Schockett, 31 Tenn. App. 346, 215 S. W. (2d) 18, 25, is to the same effect as Creekmore v. Woodard. In this case, in the opinion of the Court of Appeals (Eastern Section), written by Howard, J., the following language appears:

"(9) Inasmuch as defendants did not plead specially that plaintiffs were guilty of contributory negligence as is required under Code Section 8767, we have not considered the fifth assignment of error. Hammett v. Vogue, 179 Tenn. 284, 165 S. W. (2d) 577."

It is argued on behalf of the plaintiff that, since, "It is the object of section 8767, modifying the prior statute, to enable the plaintiff to be forewarned of every matter of defense intended to be relied on by defendant, and to

require a defendant to make explicit all matters of defense which otherwise would be implicit in pleas of the general issue", as was said by the Supreme Court in Provident Life & Accident Insurance Co. v. Prieto, 169 Tenn. 124, at page 159, 83 S. W. (2d) at page 264, defendant should not be permitted to rely on the Illinois law because it was not included in the special pleas. The argument is that, since before the enactment of the Uniform Judicial Notice of Foreign Law Act in 1943 the defendant would have had to plead and prove the Illinois law in question before it could be permitted to rely on same, the right of the court to take judicial notice of foreign laws being but a substitute for proof, it cannot supply the absence of pleading.

We would be disposed to adopt this argument but for the fact that plaintiff's cause of action, as set out in her declaration, is itself grounded upon the Illinois statute which permits a recovery in cases of death by wrongful act, same being Chapter 70, Ill. Revised Statutes 1955, which is copied in full in the declaration. Since plaintiff seeks a recovery under authority of this law of Illinois, which was enacted by the Legislature of that state, we think her right of recovery must be held to be barred unless the proof establishes what would be held to be a cause of action if suit had been brought under authority of that statute in the state of Illinois, itself. As pointed out above, plaintiff's declaration in the instant case does not even allege that the deceased was free from contributory negligence which caused or contributed to the accident here involved, nor that at the time and place of said action, he was exercising due care. In view of this fatal omission from the allegations of plaintiff's declaration, we think it is clear that if same had been filed in the state

of Illinois, it would have been demurrable. It probably would not have been demurrable in Tennessee, because, until the Illinois law was called to the attention of the court so as to permit it to take judicial notice of same, the court would properly have indulged in the presumption that the Illinois law on the subject was the same as the law of Tennessee. But, when, at the trial, the judge's attention was called to the Illinois law and the application of same, as embodied in Illinois decisions, pointed out, he should have taken judicial knowledge of that law and sustained defendant's motion for a directed verdict.

Our own Supreme Court has gone so far in the application of foreign law embodied in an Arkansas statute granting the right of recovery by an administrator for death by wrongful act, as to hold that such law can control the proceeds of a recovery in a suit by such administrator, by requiring that same be distributed according to the Arkansas laws of descent and distribution, notwithstanding the fact that the deceased was a resident of Mississippi where the laws of descent and distribution were different. Hartman v. Duke, 160 Tenn. 134, 22 S. W. (2d) 221.

In our opinion the first assignment of error should be sustained.

The fifth and last question raised by defendant's assignments of error in this Court is embodied in assignments 4, 5, 7, and 8. It is that there is no evidence to sustain the verdict and judgment in this cause; or, stated differently, that defendant's motion for a directed verdict should have been granted, independent of whether or not the Illinois law was applied to the case. Plaintiff's position is, of course, that this Court is not permitted to

weigh the testimony, and that since the testimony of the witness, Gerald Galbreath, was to the effect that all of the debris resulting from the collision was on the west or left hand side of the road, from the point of view of defendant's driver, and that the gouge marks caused by the Pontiac automobile began at the center line and continued to the west thereof, the jury was authorized to find as a fact that the point of impact was on the west side of the highway, and from that fact infer that the driver of defendant's vehicle was guilty of negligence, and that the jury's finding is conclusive, notwithstanding all of the other witnesses, including two eye witnesses, testified to the contrary. Plaintiff's counsel undertake to bolster this position by pointing out that certain efforts were made to impeach the testimony of some of defendant's witnesses, and that the jury must be presumed to have discredited their testmiony. This position of plaintiff would be sound, but for the circumstance that the physical facts established by the undisputed testimony, viewing same in the light most favorable to plaintiff, contradict the oral testimony of witness, Galbreath.

Established physical facts are controlling over direct testimony when it is impossible to reconcile the physical facts with the direct testimony. Nashville, C. & St. L. Railroad v. Justice, 5 Tenn. Civ. App. 69, 70-71; Oliver v. Union Transfer Co., 17 Tenn. App. 694, 696-697, 71 S. W. (2d) 478; Harris v. Miller, 24 Tenn. App. 332, 335, 144 S. W. (2d) 7.

That it is impossible to reconcile the testimony of witness, Gerald Galbreath, with the physical facts is established by the testimony of Captain Sam Manning of the Memphis Police Department who was introduced as an

expert witness by plaintiff. As such expert witness, he testified that when a heavy and a light vehicle come together, under circumstances such as were involved in the instant case, the heavy vehicle never ceases its forward movement, but the vehicles rear up and settle down before the one beneath is mashed into the pavement, and that this requires an interval of time. He also testified that a one-tenth of a second a vehicle traveling at thirty miles per hour (the rate at which the undisputed testimony shows defendant's vehicle was traveling), will travel 4.4 feet. Taking, therefore, the testimony of witness, Galbreath, at its face value, it was demonstrated to a mathematical certainty that the point of impact could not have been on the west or defendant's left hand side of the highway.

Expert testimony may be used to dispel inferences which otherwise might be drawn from circumstances established by other proof. Quaker Oats Co. v. Davis, 33 Tenn. App. 373, 232 S. W. (2d) 282; Tennessee Valley Electric Co-op. v. Harmon, Tenn. App. 286 S. W. (2d) 593, certiorari denied by the Supreme Court, Feb. 3, 1956.

Assignments of error 4, 5, 7, and 8 are therefore sustained.

The net result is that assignments of error 2, 3, 6, and 9 are overruled, and assignments of error 1, 4, 5, 7, and 8 are sustained. It follows from our sustaining of these assignments of error that, on either or both of the two theories hereinabove announced, the trial judge should have granted the motion of defendant for a directed verdict. The cause is, accordingly, reversed and dismissed.

The costs are adjudged against the plaintiff, as defendant in error in this Court.

Avery, P. J. (W. S.), and Carney, J., concur.

## On Petition to Rehear.

BEJACH, J. In her petition to rehear, the plaintiff in this cause, as defendant-in-error in this Court, plants herself on the proposition that, because the memorandum of authorities from which this Court deduced and applied the law of the State of Illinois to the facts in this case,— a copy of which memorandum plaintiff's attorney admitted in open court that he had received at or before one of the former trials of this cause,—was not incorporated in the bill of exceptions nor otherwise made a part of the record of this cause, this Court could not properly consider same, and that therefore this Court had no authority to apply the Illinois law.

The petition to rehear cites and relies on Cosmopolitan Life Insurance Co. v. Woodard, 7 Tenn. App. 394; Steele v. Davis, 52 Tenn. 75; Kennedy v. Kennedy, 84 Tenn. 736, 737; Jones v. Burch, 71 Tenn. 747; Shelby Co. v. Bickford, 102 Tenn. 395, 406, 52 S. W. 772; Burkett v. Burkett, 193 Tenn. 165, 245 S. W. (2d) 185; Frierson v. Smithson, 21 Tenn. App. 591, 113 S. W. (2d) 778, and Brodie v. Miller, 24 Tenn. App. 316, 143 S. W. (2d) 1042, as authorities for this proposition. These cases amply support the proposition of law that a bill of exceptions can not be altered nor added to in this Court, nor even in the lower court after the expiration of the term. Indeed, this Court, in its opinion filed February 22, 1956, applied that principle of law when it denied the suggestion of diminution of the record for the purpose of bringing before this Court

special requests of defendant which had not been incorporated in the bill of exceptions.

The fallacy of plaintiff's position is, however, that we do not consider it necessary that this memorandum of authorities should have been incorporated in the bill of exceptions, or otherwise made part of the record, as a prerequisite to the consideration of same by this Court and consequent application of the law of Illinois embodied in same to the facts of this case. When plaintiff's attorney admitted in open court that he had received a copy of the memorandum of authorities in question, that established the notice required as a prerequisite to defendant's right to rely on same. In his brief, and to a considerable extent in the oral argument before this Court, plaintiff's attorney contended that defendant could not be permitted to rely on the law of Illinois, nor apply same to the facts of this case, because, as presented at the trial in the lower court, plaintiff had had no notice of defendant's intention so to do, as is required by Section 9773.7, 1950 Supplement to the Code of Tennessee. It was the contention of plaintiff's attorney, as this Court understood his contention, not only that he had had no such notice, but, also, that the absence of any showing in the bill of exceptions that such notice had been given, precluded the right of defendant or defendant's counsel to put the trial judge in error for not having applied the Illinois law to the facts of the case. To meet this contention of plaintiff's attorney, counsel for defendant undertook to suggest a diminution of the record, and to have this Court issue the writ of certiorari to bring up one or both of the two wayside bills of exception which had been filed in the lower court after each of two former mistrials, —which wayside bills of exception he claimed would

establish as a fact that the notice required by Section 9773.7, 1950 Supplement to the Code of Tennessee had been given by delivering to plaintiff's attorney a copy of the memorandum of authorities relied on to establish the common law of Illinois. Just how that fact would appear if said wayside bills of exceptions were brought up to this Court, whether from cross examination of witnesses at one or both of said former trials, by statement of counsel during one or the other of said trials, statement of the trial judge in the course of the trial at one or the other of said trials, or otherwise, was not stated; but certainly, it was the contention of defendant's counsel that if said wayside bills of exception were brought to this Court, they would meet and answer the objection made by plaintiff's counsel that no such notice had been given. In that connection, defendant's counsel went so far as to state that the only object of bringing up said wayside bills of exception was to establish that the notice in question had been given, and that if plaintiff's counsel would simply admit as a fact that a copy of the memorandum of authorities referred to had been delivered to him, the suggestion of diminution of the record would be unnecessary. Thereupon, plaintiff's attorney in open court, and before the argument of this case in this Court had been concluded, admitted as a fact that he had received from defendant's attorney a copy of the memorandum of Illinois cases as stated, but he denied that that fact would or could make any difference to the rights of defendant as appellant in this Court. Evidently, that denial of the right of defendant's attorney to rely on same in this Court, was predicated upon the contention now advanced in the petition to rehear, viz., that because said memorandum of authorities was

not incorporated in the bill of exceptions nor otherwise made a part of the record, defendant's attorney should not be permitted to rely on same in this Court.

 The members of this Court, and especially the author of this opinion, are just as reluctant to state the exact language used in making the admission as is plaintiff's counsel, but we do not consider the exact language used by plaintiff's counsel to be material. Suffice it to say, that, on the day this case was argued in this Court, to wit, November 3, 1955, in preliminary consultation by the members of this Court, they were unanimous in the opinion that the admission made by plaintiff's attorney had rendered unnecessary a suggestion of diminution of the record for the purpose of bringing up either or both of the wayside bills of exception. Likewise, this was the unanimous opinion of the members of this Court in consultation before the opinion was filed on the 22nd day of February, 1956. Such is still the opinion of this Court, and we do not now consider it material whether the wayside bills of exception would or would not in fact disclose the presentation of the memorandum of authorities, as contended for by defendant's attorney. The materiality of the admission made by plaintiff's attorney, as viewed by this Court, is that, regardless of the particular language in which the admission was phrased, it established as a fact that the notice required by Section 9773.7, 1950 Supplement to the Code of Tennessee, had been given and that defendant's right to have the trial court and this Court take judicial notice of the Illinois law had been established. Section 9773.7, 1950 Supplement to the Code of Tennessee is as follows:

"9773.7. Evidence thereof after notice. — Any party may also present to the trail court any admissible evidence of such laws, but, to enable the party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleadings *or otherwise.*" (Emphasis ours.)

 As we construe this Code Section, its purpose is to prevent any party to a law suit from being taken by surprise by having an adverse party, without previous notice, present to a trial court law from another jurisdiction and have the trial court take judicial notice of same. In our view of the situation, pleading of foreign law is not now necessary, where reasonable notice of the intention to rely on such foreign law has been given in any appropriate manner, although pleading of same is also expressly authorized by statute. In our opinion, the delivery to plaintiff's attorney of the memorandum of Illinois cases at either the first or second trial of this cause, constituted, "reasonable notice", under the head of, "or otherwise". Certainly, plaintiff's counsel could not thereafter contend that plaintiff had been taken by surprise.

 With reference to the right of plaintiff's attorney to make the admission in question, and to bind his client thereby, there can be no doubt. Hammon v. Miller, 13 Tenn. App. 458, 462; Utley v. Louisville & N. R. R., 106 Tenn. 242, 61 S. W. 84; Fuller v. Jackson, Tenn. Ch. App., 62 S. W. 274. With reference to the duty and propriety of counsel in the making of said admission, we quote from the case of Pemiscot Co. Bank v. Central State National

Bank, 132 Tenn. 152, 168, 177 S. W. 74, 78, wherein Mr. Justice Samuel Cole Williams, speaking for the Supreme Court, said:

"The result is that the decree of the chancellor must be reversed; but in justice to that able official it should be explained again that the bill of complaint, as construed and put by counsel to this court, differed from the bill as drafted and filed, and as it may have been considered by the chancellor, in the court of trial. The course of counsel in thus fairly *phasing* the case for test on appeal is most commendable."

Plaintiff's petition to rehear also challenges that part of the opinion of this Court filed February 22, 1956 which holds that the trial judge should have granted a directed verdict in favor of the defendant whether the law to be applied to the case be that of the State of Illinois or that of the State of Tennessee. The basis of our ruling on that point was and is the well settled principle of law that, "Established physical facts are controlling over direct testimony when it is impossible to reconcile the physical facts with the direct testimony." In applying this principle of law to the facts of the instant case, it was and is the opinion of this Court that the testimony of plaintiff's witness, Gerald Galbreath, was completely irreconcilable with the undisputed physical facts, and should, therefore, have been disregarded. The testimony of Galbreath was to the effect that all of the debris resulting from the collision was on the west or left hand side of the road, from the point of view of defendant's driver, and that the gouge marks caused by the Pontiac automobile began at the center line and

continued to the west thereof. From that testimony, it was argued that the jury was authorized to find as a fact, and did so find, that the point of impact was on the west side of the highway, from which finding of fact, the jury was further authorized to infer and did infer that the driver of defendant's vehicle was guilty of negligence which proximately caused the death of plaintiff's intestate. Viewing this testimony, however, in the light most favorable to the contentions of plaintiff, it was and is the opinion of this Court that the physical facts demonstrated beyond peradventure of a doubt that the point of impact was not on the west side of the highway, but on the east side, and that, therefore, the jury was not entitled to find as a fact that the collision occurred on the west side of the highway, and that defendant's driver was therefore guilty of negligence which caused the death of plaintiff's intestate. The physical facts as established by the undisputed evidence in this cause were, that the tractor-trailer unit of defendant, weighing about 52,000 pounds, with its front wheels locked and turned sharply to the left as a result of the impact, pushed the Pontiac automobile driven by deceased, which weighed about 4,000 pounds, northwestwardly across the highway to the point where the two vehicles came to rest, and that in this pushing movement, the Pontiac dug out gouge marks in the highway. Taking the testimony of witness Galbreath to be true, which is the view most favorable to the plaintiff, the gouge marks made by the Pontiac automobile began at the center line of the highway. Taking that to be true, and assuming that the gouge marks did not extend to the east of the center of the highway, the physical facts demonstrate nevertheless that the point of impact of the two vehicles must have been on the east

side of the highway. Of necessity, it required an interval of time after the collision before the gouge marks were made by the front part of the Pontiac, the tractor-trailer must have pushed it from somewhere on the east side of the highway back to the center of the highway before the gouge marks could begin at the center.

The rule of law, that "Established physical facts are controlling over direct testimony", has been recognized and applied in several Tennessee cases.

In the case of Nashville, C. & St. L. R. R. Co. v. Justice, 5 Tenn. Civ. App. 69, plaintiff sued the railroad to recover the value of a trunk and its contents which she claimed were damaged by the seeping in of molasses while the trunk was in custody of the railroad company. She had recovered a judgment in the lower court, but on appeal to the Court of Civil Appeals, the trunk, itself, which had been made an exhibit, was examined by the court. In reversing the judgment of the lower court, Mr. Justice Higgins, speaking for the Court of Civil Appeals, said:

"The contention of the plaintiff below was that the molasses was spilled upon her trunk while in the care of the railway company and permeated the joints or cracks thereof, and thus reached the interior and spoiled the contents. The insistence of the railway company primarily was that the contention of Mrs. Justice was an impossible one, and that its improbability or absolute untruthfulness was established by the physical condition of the trunk. This trunk was before the lower court and was certified to this court as a part of the record. It is insisted by the railway company that an examination of the

trunk demonstrates that the fluid was originally on the inside and that it could not have entered from the exterior.

\* \* \* \* \* \*

"It seems to be now firmly established that appellate courts may disregard impossible or *palpably* improbable testimony and treat it as no evidence: [Quock Ting] v. U. S., 140 U. S. 417 [11 S. Ct. 733], 35 L. Ed. 501. Tested by this rule, plaintiff's explanation of the seeping of the fluid from the outside must be discredited. This case was and is demonstrably impossible, and no court could proceed to judgment satisfactorily under the circumstances." Nashville, C. & St. L. R. R. Co. v. Justice, 5 Tenn. Civ. App. 69, 70-71.

In Oliver v. Union Transfer Co., 17 Tenn. App. 694, 71 S. W. (2d) 478, the facts were much more closely analogous to the facts involved in the instant case. In that case, plaintiff, Mrs. Oliver, sued for damages for personal injuries received while she was riding as a passenger in defendant's bus when it was turned over into a ditch on the side of the highway. The plaintiff's theory, as to which she and other witnesses on her behalf testified, was that the bus was traveling at the rate of 35 to 40 miles an hour while passing another automobile, and that the bus did not check its speed, and suddenly turned over into the ditch. The defendant's theory was that the bus was practically at a standstill on the side or shoulder of the road with the outside wheels more than two feet from the edge of the shoulder, when the shoulder suddenly caved in and turned the bus over. In sustaining the testimony of plaintiff and her witnesses, Crownover,

J., speaking for the Middle Tennessee Section of the Court of Appeals, said:

"The bus was not damaged, and the other passengers suffered no injuries of any consequence. The uncontradicted evidence shows that the bus turned over at right angles and did not plow into the ditch; hence, taking the uncontradicting evidence and the physical facts, we think the defendant was guilty of no negligence that proximately contributed to the accident.

"The physical facts show that the bus could not have been traveling 35 or 40 miles an hour, or anything like that rate of speed, when it turned over, as it did not plow into the ditch or embankment, and the shoulder of the road was broken off or caved in for a distance of only the length of the bus. These things could not have happened had the bus been traveling at that rate of speed.

" 'A statement of alleged facts inherently impossible and absolutely at variance with well-established and universally recognized physical laws will not supply the required scintilla of evidence, a theory inherently impossible based upon a statement of alleged facts certainly cannot supply it.' Louisville Water Co. v. Lally, 168 Ky. 348, 182 S. W. 186, 187, L. R. A. 1916D, 300.

" 'Courts * * * are not required to give credence to a statement that would falsify well-known laws of nature.' Weltmer v. Bishop, 171 Mo. 110, 71 S. W. 167, 169, 65 L. R. A. 584, Writ of Error Dismissed in 191 U. S. 560, 24 S. Ct. 848, 48 L. Ed. 302.

" 'When the testimony introduced by plaintiff is shown by the physical facts and surroundings to be absolutely untrue, or when it is so inherently improbable as that no reasonable person can accept it as true or possible, the Circuit Judge should take the case from the jury, notwithstanding oral statements tending to show a right of action.' Nashville, C. & St. L. R. [Co.] v. Justice, 5 Tenn. Civ. App. 69.

\* \* \* \* \* \*

"In view of the physical facts and the other evidence adduced, we cannot see that the bus company is guilty of negligence or that it failed to observe the highest degree of care imposed on it as a common carrier." Oliver v. Union Transfer Co., 17 Tenn. App. 694, 698-699, 71 S. W. (2d) 478, 480-481.

In Harris v. Miller, 24 Tenn. App. 332, 335, 144 S. W. (2d) 7, 8, although in that case the physical facts were reconciled with the oral testimony, the Court of Appeals (Eastern Section) speaking through Portrum, J., said:

"Established physical facts are controlling over direct testimony when it is impossible to reconcile the physical facts with the direct testimony, but where the testimony as a whole can be reconciled then it it the duty of the court to reconcile the physical facts with the direct testimony and not disregard the direct testimony as impeached testimony."

But it is argued that the testimony of Captain Sam Manning of the Memphis Police Department, introduced as an expert witness by the plaintiff, was necessary to establish the physical facts as above stated, and that the jury was entitled to disregard his testimony just as it

disregarded the testimony of all the witnesses except Galbreath. Numerous authorities are cited in the petition to rehear for the proposition that, "The general rule is that the value of an expert's opinion is for the jury to determine and is never conclusive in a case of this character." Among the authorities cited are, 20 Am. Jur. Sec. 1208, Evidence; 32 C. J. S., Evidence, Sec. 572, and the cases of Act-O-Lane Gas Service Co., Inc., v. Clinton, 35 Tenn. App. 442, 450, 245 S. W. (2d) 795, 799; East Tennessee Natural Gas Co. v. Peltz, Tenn. App. 270 S. W. (2d) 591, 603; American National Insurance Co. v. Smith, 18 Tenn. App. 222, 227, 74 S. W. (2d) 1078, 1081; Nashville, C. & St. L. Ry. Co. v. Jackson, 187 Tenn. 202, 217, 213 S. W. (2d) 116, 122; Standard Oil Co. of La. v. Roach, 19 Tenn. App. 661, 671-672, 94 S. W. (2d) 63, 69; and Duling v. Burnett, 22 Tenn. App. 522, 124 S. W. (2d) 294.

The fallacy of this contention made by plaintiff's counsel lies in the fact that, independent of the testimony of Captain Manning, both the lower court and this Court could take judicial notice of the matters about which he testified. The testimony of Captain Manning was that in one-tenth of a second a vehicle traveling at 30 miles per hour will travel four and four-tenth feet. This is but a matter of mathematical calculation which this Court is certainly capable of making. Other facts testified to by Captain Manning embody merely the application of the laws of Physics, of which this Court may take judicial notice.

On the subject of judicial notice, from the treatise on Evidence in 20 Am. Jur. beginning on page 46 of volume

20 and continuing through page 133, the following excerpts are quoted:

"There are, however, many facts which need not be proved, since they are judicially noticed by the court and jury. Judicial notice of such facts takes the place of proof and is of equal force. It displaces evidence since it stands for the same thing. Judicial knowledge may be defined as the cognizance of certain facts which a judge under rules of legal procedure or otherwise, may properly take or act upon without proof because they are already known to him or because of that knowledge which a judge has, or is assumed to have by virtue of his office." 20 Am. Jur. p. 47.

"Judicial notice will be taken of well established facts of common knowledge even though the pleadings contain allegations to the contrary. Such matters of common knowledge may receive the same recognition, in the courts of both original and appellate jurisdiction, that they would have received if formally proved and made a part of the record. This rule is of practical value in the law of appeal, for the missing links in the testimony may often be supplied by judicial knowledge." 20 Am. Jur. p. 54.

"Proof is never required of a fact of which the court is bound to take judicial notice. The courts repeatedly refuse to hear evidence concerning matters of which they take judicial notice. On the other hand, as a general rule, when a fact is properly subject to judicial notice, evidence cannot be received to deny its existence. This rule proceeds upon the obvious premise that to admit such contradictory

evidence would create the anomaly of an indisputable fact being disputed." 20 Am. Jur. p. 54.

"In several instances the appellate courts have, without attempting to formulate any rule upon the subject, recognized facts which have been ignored by the trial court. It seems clear that the failure or refusal of the trial court to take notice of a fact brought before it does not prevent the higher court from giving effect thereto." 20 Am. Jur. p. 55.

"Courts will ordinarily take judicial notice of the operation and effect of natural laws and of nature's powers and forces, with the limitation that such notice is limited to those natural laws which are of universal occurrence, invariable in their action and of common knowledge." 20 Am. Jur. p. 92.

"Judicial notice will also be taken of the rules of arithmetic." 20 Am. Jur. p. 113.

"Judicial notice is taken of matters commonly and generally known with reference to automobiles and their operation." 20 Am. Jur. p. 130.

"Courts take judicial notice of the general rules governing the operation of mechanical powers, and recognize the mechanical devices in general use, the nature of the use of a specific device, its efficiency, and the nature and method of its construction." 20 Am. Jur. pp. 131-132.

The suggestion made in the petition to rehear, that since no eye witness saw the gouge marks being made, the jury could just as readily have inferred that they began at the place where the automobiles came to rest

and went back to or towards the center of the highway, rather than that they began at the center of the highway and extended to where the automobiles came to rest, is so naive and unreasonable as to require no further comment in this opinion.

The prayer of the petition to rehear "that the motion of plaintiff-in-error to suggest the diminution of the record be granted so as to make it abundantly clear in the record that the granting of such motion would not supply the omitted facts which plaintiff-in-error seeks to establish", is, in the opinion of this court, without merit.

As pointed out above, it is immaterial whether the wayside bills of exception filed in connection with the former trials of this cause, do or do not include the memorandum of authorities indicating the law of Illinois, or even whether or not said wayside bills of exception establish as a fact that such memorandum of authorities was delivered to plaintiff's attorney. This Court is interested only in knowing that the notice required by Section 9773.7, 1950 Supplement to the Code of Tennessee, was given; and the admission made by plaintiff's counsel has already established that as a fact.

In the opinion of this Court, the petition to rehear is without merit and same is accordingly denied.

Avery, P. J. (W. S.), and Carney, J., concur.