AMERICAN NAT. INS. CO. v. SMITH.—74 S. W. (2d) 1078.

Eastern Section. March 24, 1934.

Petition for Certiorari denied by Supreme Court, October 13, 1934.

Cates, Smith & Long and Wilbur W. Piper, all of Knoxville, for plaintiff in error.

Johnson, Cox & Johnson and Cecil Meek, all of Knoxville, for defendant in error.

DeWITT, J.  This is an action brought in the circuit court of Knox county on a policy of life insurance by Annie B. Smith, widow of Lawrence M. Smith, the insured, as beneficiary named in the policy—resulting in a verdict and judgment in her favor in the sum of $544.17, of which $500 is the amount named in the face of the policy, and the balance is interest thereon.  The question presented upon this appeal in error is whether or not the trial judge should have sustained the motion of defendant, made at the close of all the evidence, for peremptory instructions in favor of the insurance company, upon the ground that there was no evidence upon which a verdict of the jury for the plaintiff could be predicated.  It is insisted that there was no evidence to support the verdict of the jury. The policy contained a provision that no obligation was assumed by the company unless on the date thereof, September 7, 1931, the insured was alive and in sound health.  The defense made was that the insured was not in sound health on said date.  The insured died on September 14, 1931, of peritonitis resulting from a gastric ulcer. It is insisted that the undisputed, material, determinative evidence

compels the sole conclusion that the insured was seriously afflicted with the ulcer on September 7, 1931, and was therefore not in sound health, and had been so afflicted for a considerable time prior to said date.

The policy is one of industrial insurance at a weekly premium of 41 cents. Premiums thereon for the first two weeks were paid and return of these premiums was tendered by the company but refused. Under this policy no physical examination was required or made. ██ ██ A provision in a policy of life insurance that the insurer assumes no obligation thereunder unless the insured is in sound health at the date of the policy is valid and binding on the insured. Metropolitan Life Insurance Company v. Chappell, 151 Tenn., 299, 269 S. W., 21, 40 A. L. R., 662; Life & Casualty Insurance Company v. King, 137 Tenn., 685, 195 S. W., 585. In these and other Tennessee decisions the phrase "sound health," when used in the sense used in such a policy, does not mean perfect health or imply absolute freedom from bodily infirmity or tendency to disease, but means generally the absence of any vice or disease in the constitution of a serious nature, or that has direct tendency to shorten life, as contradistinguished from a temporary ailment or indisposition. In Metropolitan Life Insurance Company v. Chappell, supra, it is declared that it is clear from the language of the policy that the insurer's promise of insurance is not absolute but conditional, and that the existence of life and sound health in the insured on the date of the policy is the condition on which the promise is made; that it is the fact of sound health of the insured which determines the liability of the insurer in this character of policies, not apparent health, or his or any one's opinion or belief that he was in sound health. This rule was also applied in Metropolitan Life Insurance Company v. McGowan, 2 Tenn. App., 341, and American National Insurance Company v. Taylor, 13 Tenn. App., 134.

If, therefore, the undisputed, material, determinative evidence warrants only the conclusion that Lawrence M. Smith at the date of the policy was afflicted with a disease or vice in the constitution of a serious nature, or that had a direct tendency to shorten life, the motion for directed verdict should have been sustained and the suit dismissed. If, on the other hand, there is substantial evidence upon which the jury could base a conclusion that he had no grave, important, or serious disease on that date, and was free from any ailment that seriously affected the general soundness or healthfulness of his system, the motion for a directed verdict was properly overruled.

The solution of this question depends upon the controlling or noncontrolling quality of the testimony given in this cause by medical experts. There was a sharp conflict in the testimony of lay witnesses as to the appearance and health of the insured for many

months prior to the date of the policy. The plaintiff, his widow, testified that he was in good health prior to his becoming sick two or three days before he died; that during the four years of their married life he had not called the physician; that he was a large man of ruddy complexion, a hearty eater; and that she did not think that she had seen him cough and vomit any during the year preceding his entrance to the hospital. She had not lived with him, but had seen him once or twice a week for two months prior to his last illness as he had lost his employment in April, 1931, and he had gone to live with his mother and she had gone to live with her mother. She admitted on cross-examination that at various times when he would get to coughing he would vomit after meals.

John Phillips, a grocer near to the home of the insured, testified that he had known him for twenty years; that he saw him at his store the day before he went to the hospital and some one mentioned that he was "pretty sick"; that in the years before that time he looked as healthy as any man he knew; that he had not known him to be sick before; and that somebody told him that he had been out in the country the day before gathering pears and had eaten too many pears and had the colic or some other trouble. He said that Smith was in his store on the day after the policy was issued and appeared to be in good health.

M. P. Hill who had worked with Smith for a furniture company prior to April, 1931, testified that during that time he did not have any stomach trouble so far as the witness knew; that he had a good color; that he had seen him lift furniture, stoves, etc., was stout about such things; and that he never knew him to be sick.

Mrs. Johnson, the plaintiff's sister, and her husband testified that about two months before Smith died he ate a meal with them and they did not notice any ill effects from it.

Mrs. Thacker testified that Smith dined with her and her husband on July 27, 1931; that he ate heartily and remarked that he was feeling well, and was in good spirits; and that they observed no ill effects.

On the other hand, many witnesses testified that Smith had frequently told them that he was a sick man; that he was not able to work for six or eight months before he died; that he said that something was wrong with his stomach; that he frequently after meals suffered nausea, vomiting blood at times; that he lost much flesh and had to have his clothes reduced in size; that he lost twenty-five pounds in the month preceding his death; that for two months before his death he had a "deathly color," and was feeble.

The requirement of good health under the contract sued on was not satisfied by appearance of good health, or reasonable belief that the insured was in good health; but good health in fact was required. The argument that the perforation of the stomach

causing peritonitis could be inferred to have resulted from climbing the tree to gather pears or from eating pears or from operating a lawn mower (there being evidence that the insured did sometimes operate a lawn mower), and that this affords a basis for the verdict, ·is insufficient; so is the fact·undisputably shown that a person might have a gastric ulcer and by proper diet and treatment live with it for a long time. All the evidence shows without dispute that it is a serious disease, and the only reasonable inference is that it is a constant menace to health and even to life. The undisputed evidence shows conclusively that the insured had a gastric ulcer at the date of the policy.

Of course, this internal affliction of the insured was not itself visible, but it was revealed certainly and indisputably when he was operated upon on the evening of September 11, 1931, at the Knoxville General Hospital. The physicians who examined him, one of them being also the operator, testified that he had been in unsound health.for from twelve to eighteen months. Dr. Pappas, who operated upon him, testified that the rupture of the ulcer had occurred about twenty-four hours prior to his admission to the hospital; that the insured had had symptoms referable to an ulcer of the stomach for one year. He and Drs. Harrison and Vernon I. Smith testified that such a condition was always serious. All of these physicians saw the insured. Dr. Harrison was asked and answered as follows:

"Q. Is or not the presence of stomach ulcers in a person of a serious nature, so far as his health is concerned? A. Always serious.

"Q. Doctor, taking Lawrence Smith, as you saw him, without any history of vomiting, or passage of blood in the stools, just taking his condition as you saw there, with the operation that became necessary, would you or not say that—say five days before that, he was or was not in sound condition of health? A. He wasn't in sound condition of health.

"Q. That is you mean, or do you mean by that, say five days before the 11th of September, that is what I am asking about? A. Five days previous to admission to the hospital, he couldn't have been in sound health.

"Q. In other words, just taking that man as you saw him there, and as you found him there, and as things developed, how long do you say that unsoundness of health had existed prior to his admission? A. That would be hard to estimate, it would be for weeks or months, instead of days."

There is no conflict among the expert witnesses as to this fact of unsound health at the date of the policy. Dr. Rule, an expert introduced by the plaintiff, testified on cross-examination that the pathological condition—the ulcer—must have existed before the rupture, or puncture, although the patient did not know of. .it; and that one in the condition of the insured at the time of the operation

must have had an unsound condition in his stomach for a considerable time theretofore. He testified that such rupture might result from any violent exercise, such as pushing a lawn mower, and that eating rough food, like a green pear, would have a tendency to cause an aggravation of the trouble, might be a causative factor. But the question does not depend upon the time or immediate cause of the rupture but upon the existence, at the date of the policy, of the ulcerated condition as constituting an unsound condition of health. This question did not lie within the common observation and experience of laymen. Looking alone to the lay testimony relied upon to support the verdict, and disregarding all to the contrary—positive lay testimony as to the insured's ill health for many antecedent months—we are yet unable to treat it as evidence. It is almost wholly negative in character. It is not based upon any result of medical examination or opinion. It rises no higher than mere evidence of appearance of good health, some physical exertions, failure to complain of illness. It does not conflict with a fact of the existence of a dangerous ulcer on September 7, 1931. It is but the facts which a lay witness details as to such matters, the appearance and conduct which he describes, which chiefly and primarily constitute his testimony as evidence of any substantial value. Fitch v. Trust Co., 4 Tenn. App., 87.

This case is different from Sovereign Camp of Woodmen of World v. Mankin, 5 Tenn. App., 188, where at the date of a reinstatement of the insured he had a small, incipient carbuncle which, seven days later, caused blood poison. His physician did not regard him as a sick man until the blood poison developed. Another physician testified hypothetically that in his opinion the insured was gravely ill from the beginning. Thus there was a conflict between experts. This and the testimony of lay witnesses required that the issue of sound health be submitted to the jury.

■ Ordinarily, the value of an expert's opinion is for the jury to determine; and this would apply in the instant case to the testimony given in answer to hypothetical questions. But the testimony of certain of these physicians was positive, direct, not mere opinion, as to the existence of the ulcer on the date of the policy. In Bennett v. Fail, 26 Ala., 605, it was held that an opinion of a medical expert as to the length of time a disease has existed, based upon personal examination, should not be discredited by the court by a charge that the testimony of such physician is a matter of opinion only. We deal here with a hidden disease, the very symptoms of which would not be apparent to a layman. When the case concerns a highly specialized branch of medical science, with respect to which a layman could have no knowledge (as to the length of the prior existence of an ulcer which had ruptured), the court must depend upon expert testimony; and, in such case, in the absence of sub-

stantial evidence to the contrary, it is improper to submit the issue to the jury. Vaughan v. Oliver, 3 Tenn. App., 566; Ewing v. Goode (C. C.), 78 F., 442, 444; Moratzky v. Wirth, 74 Minn. 146, 76 N. W., 1032; Clark v. State, 12 Ohio, 483, 40 Am. Dec., 481.

The testimony of these physicians must therefore be deemed conclusive. The appellate court does not weigh evidence in a cause tried to a jury, according to its preponderance, but it must and does determine whether or not the evidence relied on to support the verdict is substantial in itself—has fitness to induce conviction. The facts detailed by the lay witnesses in this cause are not after all in conflict with the testimony of the physicians, for they relate only to external things which existed contemporaneously with the disease.

The undisputed, material, determinative evidence warrants only the conclusion that Lawrence M. Smith was not in sound health at the date of the policy, and therefore there can be no recovery upon the policy.

The judgment is reversed, the verdict set aside and the suit dismissed at the cost of the defendant in error.

Faw, P. J., and Crownover, J., concur.