# NEWARK FIRE INS. CO. v. MARTINEAU et ux., No. 1. —170 S. W. (2d) 927.

Eastern Section.   March 11, 1943.

Petition for Certiorari denied by Supreme Court, May 8, 1943.

Simmonds & Bowman, of Johnson City, for plaintiff in error.

Vines, Hawkins & Bryant, of Johnson City, for defendants in error.

BURNETT, J. This is a suit on a fire insurance contract. The house covered by this insurance contract was totally destroyed by fire thirty-five days after the policy was written. The jury returned a verdict against the insurance company for the face of the policy plus interest from the date of fire.

Martineau, defendant-in-error, was a tombstone salesman. He sold a tombstone to one Street for $1,050. Street did not have the necessary cash to pay for this purchase. Street then traded Martineau a small house in the outskirts of Johnson City for this tombstone. Martineau, likewise needing money, arranged with Street to convey him the house for a stated consideration of $1,500. Street gave Martineau a receipt for $450 cash— no money or other consideration passed. Martineau went to one Watkins—local agent for plaintiff-in-error—and had Watkins make the deed from Street to him. The deed was later redrafted by one Hodges, the abstractor for the loan company. He told Watkins that he, Martineau, wanted a loan on the property of $800. Watkins agreed to get the loan and for the purpose of the loan went and inspected the property. After this inspection a loan of $600 was agreed on. Watkins placed this loan with the Home Federal Savings & Loan Company. Then it was Martineau asked Watkins to write a policy of

insurance on the property. Watkins agreed to write a policy of $1,500 if the proceeds of the loan was used in repairing the house. This was agreed to and the matter closed. Watkins testified his inspection was made for the loan and not the insurance company—that the insurance company customarily sent someone from away to do the inspecting for them.

The house insured was a small six room box house. Four rooms were sealed and two plastered. It had one unfinished bath room but no running water—the water was from an outside spigot. The house was some twenty-five or thirty years old. As to its condition at the time Martineau purchased it he says:

"Sleepers, they were bad. The floors were not in very good condition, which I already had a man tear up the floors—I was putting new floors in what they call the dining room and kitchen, and I was going to jack up the fireplace, which was kind of sunk, not a very good foundation under it, and put some new porches, back and front porches."

A few days before the fire $2 had been spent by Martineau in repairing the floors. Some three or four families who lived in this house moved out the day before the fire. About midnight—the day following the property's vacancy and the $2 repair job—of the thirty-fifth day of the policy the house was seen afire and some-one was seen driving a car from in front of the house. The house burned to the ground. Martineau, his wife and son testify that he was home, in Elizabethton, on the night of the fire.

The defendant-in-error testified the house was worth $1,800. Mr. Land, the repair man, testified he was not familiar with the value of property in Johnson City; had

not bought or built any for years but he thought the property worth $2,000 to $2,500. Mr. Troutman, who owned a small store nearby, testified the property worth from $1,000 to $1,500. A. L. Street, the man who sold to Martineau, says the house was worth $1,500 to $2,000. Joe Summers, vice-president of the Peoples Bank, in the real estate and insurance business, says the property was worth $800 to $900. Summers did appraisal work; had been manager of the Home Owner's Loan Corporation and passed on the loans and completed the appraisals. He had sold property in the immediate neighborhood. He says the average life of a house of this type is fifty years. The lot, which was not destroyed, was worth about $200.

The jury is instructed that the plaintiff in error is "not liable for anything in excess of the actual cash value of the property at the time of the fire," etc. Street, who traded the property for a tombstone (which he never got) for $1,050 and gave a gratuitous receipt for $450, says the property is worth $1,500 or more. The other testimony, with the exception of Joe Summers, is largely guess valuation—not based on experience or true valuation— yet the jury returns a verdict for $1,500 plus interest from the date of fire. What is the answer?

The question of fraud or false swearing or overvaluation are questions for the jury to determine where there is any probative evidence on the matter. 20 A. L. R. 1172; Austin v. Maine Farmers' Mut. F. Ins. Co., 126 Me. 478, 139 A. 681, 56 A. L. R. 390; State Ins. Co. v. Hughes, 78 Tenn. (10 Lea), 461, 470. This "court does not weigh evidence in a cause tried to a jury, according to its preponderance, but it must and does determine whether or not the evidence relied on to support the verdict is substantial in itself—has fitness to induce con-

viction.'' American Nat. Ins. Co. v. Smith, 18 Tenn. App. 222, 228, 74 S. W. (2d) 1078, 1081. In the case at bar evidence pro and con was heard and the question was submitted to the jury. There is substantial evidence to support their verdict on the question.

The insurance contract sued on contains, among other agreements, the following:

''This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; . . .''

The cost of rebuilding this house at the time of the loss ranged from $800 to $2,500. Summers, who had recently built a number of similar type houses, testifies to the lower figure. Land, the repair man, testifies to the larger figure. Street, who had built similar houses, testifies that the cost would be $1,800. The latter part of the language quoted from the policy ''is by its terms merely a limitation on the insurer's liability, and is not a substantive measure of damages which the insurer can invoke.'' 29 Am. Jur., p. 891, Sec. 1186.

What constitutes actual cash value, as specified above, depends ''upon the nature of the property insured, its condition and other circumstances existing at the time of loss.'' 29 Am. Jur., p. 890, Sec. 1184. If the value is to be arrived at by replacement or reproduction cost then the age or condition before loss of the property destroyed should be considered and a proper deduction made for depreciation or deterioration. In trying a case like the

instant one the jury should be instructed along the line above suggested.

In concluding his charge to the jury the trial judge read sections 6172, 6173 and 6174 of the Code to the jury. He followed the reading of these code sections with the following instruction:

"You are instructed that if the insurance company inspected the property before issuing the policy and relied on that inspection and did not further inspect it within 90 days, as specified in the Code, and the property was in the meantime, or within 34 or 35 days after the date of the policy totally destroyed by fire, and that there was no wrong doing or fraud practiced on the company in connection with the issuance of the policy, you would be justified in accepting the value as fixed by the agent of the company and would not be justified in questioning the amount."

The Code sections above referred to are chapter 72 of the Public Acts of 1927. This act is to be read into every fire insurance policy and is a valued policy law. Riddick v. Yorkshire Ins. Co., 165 Tenn. (1 Beeler), 105, 52 S. W. (2d) 166, 168.

"The legislature has said to fire insurance companies, in effect, you shall not insure property beyond its fair value; you shall be allowed ninety days within which to inspect the buildings, to ascertain their fair value; and, if you do this, you shall not be liable beyond that fair value. But, if you ignore this law, then you stand liable for the amount of insurance that you did issue; and you cannot be allowed to escape liability for such amount on the ground that you defied the law and over-insured the property." Riddick v. Yorkshire Ins. Co., supra.

█ In the case at bar there was a total destruction of the property thirty-five days after the insurance was written. No inspection was made by the insurer. The policy was therefore not a "valued policy" but an "open policy." In other words, the insurance company has ninety days within which to make an inspection and agree with the insured. If the inspection is not made and agreement reached within that time the amount fixed in the policy is binding on the company. It is like liquidated damages. No proof after that time is necessary to fix the value of the property—it is fixed by the policy. If a fire occurs prior to the ninety-day period, unless the insurer inspects and agrees with the insured, the policy is "open" not "valued." By "open" we mean the value of the property destroyed must be established. We find on referring to the House Journal for 1927 that at page 1372 the following occurs:

"To amend by striking out the following words in line two (2) of section 1, after the words 'every Agent' 'Before making or' and inserting in lieu thereof the words 'within ninety days after making or.' "

This amendment was carried and is now carried in section 6172 of the Code. Plainly the purpose of this amendment was to give the insurer ninety days to make the required inspection.

██ The evidence in this case was uncontradicted that the property was not inspected by the insurer. Watkins made his inspection for a loan not to establish the value for the insurance. He testifies that others were to do this and that he had no authority to do so nor did he have any intention of so inspecting the property. The evidence was not conflicting on this question. It was therefore a question of law for the court.

"If the evidence adduced to support a claim of agency is undisputed whether it exists or not, is one of law for the court. Whenever it is disputed, however, it is one of mixed law and fact, for the consideration of the jury aided by instructions from the court." 1 Am. & Eng. Enc. L. (2d Ed.), p. 907. This quotation was quoted with, approval in Willcox v. Hines, 100 Tenn. 524, 533, 45 S. W. 781, 66 Am. St. Rep. 761.

There being no evidence that the property was inspected by a duly authorized agent of the insurer with authority to inspect, the court should not have read the Code sections to the jury and instructed thereon. This not being a "valued policy," the Code sections were not applicable. This instruction of an abstract proposition of law was clearly misleading and confusing to the jury. Nashville, etc., R. v. Anderson, 134 Tenn. (7 Thomp.), 665, 685, 185 S. W. 677, L. R. A. 1918C, 1115, Ann. Cas. 1917D, 902. It results that this case must be reversed and remanded for a new trial.

McAmis and Hale, JJ., concur.