Hezeskiah **BRADDOCK** et al., Appellants,

v.

**MEMPHIS FIRE INSURANCE CORPORATION** et al., Appellees.

Supreme Court of Tennessee.

April 18, 1973.

H. L. Feibelman, Jef Feibelman, Memphis, for appellants.

Armistead F. Clay, Leo Bearman, Jr., James F. Eggleston, W. Frank Crawford, Jerre G. Duzane, Hunter K. Cochran, Don Owens, James D. Causey, Stephen H. Biller, R. Gratton Brown, Jr., J. Heiskell Weath-

erford, Timothy A. Ryan, Albert McRae, Eric Babendreer, Edward W. Kuhn, Henry T. V. Miller, Carroll C. Johnson, James E. Leary, John S. Porter, Max D. Lucas, Jr., John J. Thomason, Memphis, James Clarence Evans, Charles Carter Baker, Jr., W. E. Herod, Nashville, for appellees.

## OPINION

JOHN W. WILSON, Special Justice.

On September 3, 1971, the plaintiffs, on behalf of themselves and all others similarly situated, brought this action against the defendants, 154 in number, all being insurance companies alleged to be doing business in Shelby County, Tennessee. The complaint was amended on October 8, 1971, so as to make Elnora Rodgers a party plaintiff.

Plaintiff Braddock alleges that he had an insurance contract or policy with the defendant Memphis Fire Insurance Corporation, insuring the real property known as 2002 Amity, Memphis, Tennessee; the plaintiff Ethel Golden alleges that she is the owner of an insurance policy issued by the defendant Universal Security Insurance Company, a subsidiary of the defendant Thomas Jefferson Insurance Company, on property known as 257 Lucerne, Memphis, Tennessee. The plaintiff Elnora Rodgers alleges that she is the owner of an insurance policy issued by defendant Republic Insurance Company, insuring the property known as 1184 Hollywood Street, Memphis, Tennessee.

Each of the three aforementioned plaintiffs allege that the insurance policies insured the property mentioned against loss by fire or other perils, including lightning, windstorm and hail, explosions or smoke; that each plaintiff sustained a loss by windstorm on April 23, 1971; that each policy contains the following provision in event of loss:

" . . . to the extent of the actual cash value of the property at the time of

loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured . . . "

The plaintiff Braddock alleges that damages to the roof of his property was estimated at $247.00 and after deducting $185.-00 for depreciation and $50.00 deductible provided in the policy, he was tendered a draft for $11.75, by the Memphis Fire Insurance Corporation, with release attached, and that the insurance company has breached its contract by failing to pay him the amount to which he is entitled; the plaintiff Golden alleges the damage to the roof of her house was in the sum of $725.00 and that she has been offered the sum of $421.00 in payment of the loss, after deducting $254.00 for depreciation and $50.00 which is the deductible from the loss, and that the defendant Thomas Jefferson Insurance Company breached its contract in failing to pay the amount to which she was entitled; the plaintiff Rodgers alleges the damage to the roof of her property was $600.00 and that the defendant Republic Insurance Company, after deducting depreciation and $50.00 deductible for any loss, tendered her a draft for $458.00, with a release attached, which she accepted.

The plaintiffs further aver in the complaint as follows:

"The plaintiffs Hezeskiah Braddock and Ethel Golden bring this action as a class action on behalf of themselves and all others similarly situated. The plaintiffs are members of a class which includes all residents of Shelby County who have contracted with any of the defendants herein for payment in the event of loss resulting from fire or other perils, including, but not limited to, lightning, windstorm, hail, explosions or smoke, and who, within the period of 12 months immediately prior to the filing of this cause, have suffered a loss caused by any of the said perils and against whom any of the defendants has claimed or will claim a deduction for depreciation in the payment of damages for such loss.

The plaintiffs Hezeskiah Braddock and Ethel Golden would show to the Court that the class which they represent is so numerous that joinder in this action of all members of the class is impracticable.

The plaintiffs Hezeskiah Braddock and Ethel Golden would show that there is a question of law common to the class and, further, that this question of law predominates over any questions affecting only individual members. The plaintiffs would show that the question of law common to the class which they represent is whether the defendants are entitled to a deduction for depreciation in the payment of damages for losses covered by the insurance policies in question.

The plaintiffs, allege, on behalf of the class which they represent, that the insurance policies of all of the defendants herein contain a provision identical with the provision of the plaintiffs' policies which is set forth in Paragraph II hereinabove. The plaintiffs allege, on behalf of the class which they represent, that all of the defendants herein construe the term 'actual cash value' to allow a deduction for depreciation in the payment of damages for losses under their policies and the plaintiffs further allege, in behalf of the class which they represent, that such a deduction for depreciation is contrary to the specific terms of the insurance contracts with the defendants and contrary to the law of the State of Tennessee.

The plaintiffs, on behalf of the class which they represent, allege that any re-

leases or settlements obtained by any of the defendants from the members of the class herein are unconscionable contracts of release which were obtained through misrepresentation, and are against the public policy of this County and State. The said releases are unconscionable and are not supported by any consideration. . . . ."

The prayer in the complaint is as follows:

" . . .

2. That the defendants be required, upon their oaths, to set forth and disclose:

(a) An exact copy of each defendant's standard fire insurance policy.

(b) All documents or information in the defendants' possession relating to claims made within the period of 12 months immediately prior to the filing of this cause by any member of the class herein, including the settlements and payments of such claims and what, if any, deductions were made from such payments for depreciation.

3. That the Court order that this action be maintained as a class action pursuant to Rule 23 of the Tennessee Rules of Procedure.

4. That the Court determine and declare the respective rights and duties of the parties under and by virtue of the contracts of insurance in question herein, and that the Court declare that the deduction for depreciation claimed by the defendants under the insurance contracts in question is contrary to the terms of such policies and contrary to the law of the State of Tennessee.

5. That a Temporary Writ of Injunction issue, by order of the Court, restraining and prohibiting any of the defendants from settling any claims for payment of damages to property caused by fire and other perils under the contracts of insurance in question when such settlements include a deduction for depreciation of such property.

6. That any and all settlements and releases between the plaintiffs and members of the class which they represent and the defendants herein of claims arising under the policies of insurance in question within the past twelve months be rescinded, vacated and set aside.

7. That the plaintiffs and the members of the class which they represent recover of the defendants the amounts to which they are justly entitled under their insurance contracts with the defendants, in such manner as shall be provided by this Honorable Court.

. . . . . .

9. That the attorneys for the plaintiffs and the members of the class which they represent be awarded reasonable attorneys' fees for the presentation of this cause and for the recovery of damages for the plaintiffs and the members of the class which they represent. . . . ."

The defendants have all filed motions to dismiss. A number of the defendants joined in the same motion and others filed separate motions to dismiss. On account of the great number and length of each and the conclusions we have reached as to a disposition of the matter, we will make no further discussion of the various and many motions, other than to say they came on to be heard before the trial court.

On December 22, 1971, the trial court filed a written opinion stating its findings and conclusions, from which we quote in part, as follows:

"The joinder of multiple defendants is somewhat novel, but how else can the desired results be obtained—that is, to see that the plaintiffs and the class they represent are afforded an avenue of relief through a class action suit.

All that has been said presupposes that there have been wrongs perpetrated by defendants. The Court has given a lot of consideration to that proposition and has come to the conclusion that the statement relied on by plaintiffs in the Third National Bank case must be considered as dictum.

Even though the Court properly refused to break down the issues submitted to the jury regarding depreciation, it is apparent that the reason for the refusal was because the issue of depreciation was presented to the jury through the one broad issue submitted.

The Court charged the jury to consider depreciation in arriving at the loss.

It is permissible in a chancery jury case to submit pure issues of fact to the jury or, if impractical to do so, to submit a mixed question of fact and law and instruct the jury regarding the law applicable to the issue or issues submitted.

That is exactly what the chancellor did in the Third National Bank case, and his instructions included the proposition that depreciation was a proper consideration in arriving at actual loss or actual cash value.

The Court holds, then, that this suit is properly maintainable as a class action . . . .

However, the complaint must be dismissed on the ground that, as a matter of law, deduction for depreciation is not contrary to the terms of the insurance contract described in the complaint or contrary to the laws of Tennessee."

Thereafter, on December 28, 1971, a final decree was entered, from which we copy as follows:

"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that this action be and the same is hereby maintained as a class action, the court having determined that this action is a proper class action, but in view of the court's opinion regarding the question of depreciation

IT IS ORDERED, ADJUDGED AND DECREED that plaintiffs' complaint be and the same is hereby dismissed, and costs are assessed against the plaintiffs."

It seems to us that the Court is saying that since the defendants have a right to claim depreciation under the laws of the State of Tennessee, in the event of loss, the action cannot be maintained as a class action; otherwise, it could be.

The plaintiffs excepted and prayed an appeal to the Supreme Court and assign errors as follows:

"ASSIGNMENT OF ERROR NO. 1. The Trial Court erred in holding that the statement in *Third National Bank v. American Equitable Insurance Company* relied upon by the plaintiffs was dictum.

ASSIGNMENT OF ERROR NO. 2. The Trial Court erred in ruling that as a matter of law a deduction for depreciation is not contrary to the defendants' standard fire insurance policies."

A number of the defendants excepted and prayed an appeal to the Supreme Court to the ruling of the Court that the action could be maintained as a class action. These defendants have filed lengthy briefs in which they say that the trial court was correct in dismissing the action and then assign errors in hundreds of pages of briefs in support of their contention that the action cannot be maintained as a class action if the trial court was in error. Another group of the defendants, 78 in number, identifying themselves alphabetically, from Allstate Insurance Company to Zurich Insurance Company, in reply to the plaintiffs, join in a single but lengthy brief and, while not formally appealing, have assigned error on plaintiffs' broad appeal, and preceding the lengthy assignments of error we quote from the brief as follows:

"If, but only if, this Honorable Court should hold the Chancellor to have been

in error in dismissing plaintiffs' complaint, these defendants then tender their assignments of error to the action of the Chancellor in ruling that the suit could be maintained as a class action. Central National Bank v. J. S. Willis et al., 8 Tenn.App. 204."

We will first dispose of the plaintiffs' assignments, which we have stated in full above. We will discuss the two assignments together, it appearing that the argument made under both assignments centers around the case of Third National Bank v. American Equitable Insurance Company, 27 Tenn.App. 249, 178 S.W.2d 915 (1943).

It is the theory of the plaintiffs in the pleadings, arguments and brief, that depreciation cannot be considered in the determination of actual cash value for partial loss on account of any casualty insured against in the policies issued by the several defendant insurance companies.

As stated in the brief, the plaintiffs specifically rely upon the following statement by the Court in Third National Bank v. American Equitable Insurance Company, supra, at page 925:

"While replacement cost is a dominant factor in fixing the amount of recovery for total loss of a building, it plays an even greater part in fixing the amount of recovery for a partial loss to a building. It would seem that the only practical way to measure the extent of partial damage to a building would be to inventory its damaged parts, and the only way to express such damage in terms of money would be to count the cost of replacing such parts, so as to restore the building to the same condition it was in just before the fire. And the view which we think supported by the better reason and the greater weight of authority is that depreciation may not be deducted from such cost because that would make the sum insufficient to complete the repairs and would leave the building unfinished; and this would fall short of the indemnity contracted for in the policy. Fedas v.

Insurance Co., 300 Pa. 555, 151 A. 285, 288; MacIntosh v. Hartford F. Ins. Co., 106 Mont. 434, 78 P.2d 82, 83, 84, 115 A.L.R. 1164, 1165, 1167, Annotated 1169; See Burkett v. Georgia Home Ins. Co., 105 Tenn. 548, 58 S.W. 848; Springfield Fire & Marine Ins. Co. v. Ramey, 245 Ky. 367, 53 S.W.2d 560, 563; Citizens' Fire Ins. Co. v. Lockridge & Ridgeway, 132 Ky. 1, 116 S.W. 303; 20 L.R.A.,N.S., 226."

The plaintiffs contend that the trial court was in error in ruling that the language of the Court quoted immediately above was dictum and a lengthy discussion is made in briefs of the parties on that question.

A brief history of the case of Third National Bank v. American Equit. Insurance Company, supra, can be obtained from the opinion in the case.

The suit was brought to recover for partial loss by fire of a home located at 1713 West End, Nashville, Tennessee.

The cause was tried twice below; the first trial was before Chancellor Wade and a jury. The jury reported the amount of the loss to be $7,000. Upon defendant's motion for a new trial, Chancellor Wade suggested a remittitur of $750. Complainant refused to accept the remittitur and the chancellor granted a new trial.

The second trial was before Chancellor Shriver and a jury. He submitted to the jury this issue: "What was the amount of all the direct loss or damage caused by the fire in question to complainant's property located at 1713 West End Avenue, City of Nashville, said property consisting of a two-story brick dwelling house." The jury answered, "$6,988.00".

Both parties moved for a new trial, which motions were overruled; and both appealed in error.

Defendant insisted that the chancellor erred in submitting only the one issue

above quoted and in declining to submit to the jury these five issues:

"1.  What would have been the cost of replacement or repair using materials of like kind and character?

2.  What was the amount of the depreciation from any cause?

3.  What was the market value of the property before the fire?

4.  What was the market value of the property after the fire?

5.  What was the actual cash value of complainant's loss after deductions for depreciation however caused?"

The policies contain this provision:

" 'This company shall not be liable beyond actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality . . . .'

And the company had the option 'to repair, rebuild, or replace the property lost or damaged with other of like kind and quality.' "

Immediately following the above, beginning with the last paragraph on page 918, *Third National Bank,* supra, the Court says this:

"These provisions related to details for arriving at the amount of the loss. They limited liability to the actual cash value of the property; provided the loss should be estimated according to such value, with proper deduction for depreciation, and should not exceed the cost of repair or replacement; and gave the company the option to repair or replace the property in kind. Thus *'actual cash value,' 'depreciation,' and cost of repair or replacement were factors in ascertain-*

*ing the amount of the loss; but they were only parts of that issue. The chancellor instructed the jury to consider these matters in solving that issue; and it is not claimed that such instructions were not ample and adequate. While it was proper for the jury to consider the evidence as to these several details,* we think it would not have been proper to split up the issue into such details and call on the jury for answers to each of them. Such answers, as the chancellor observed, would have left him still 'at sea' as to the amount of the loss for which defendants were liable." (Emphasis supplied.)

Again, at number (15), at page 925, *Third National Bank,* the Court said:

"So we think the evidence of the cost of repairing and restoring the building to the same condition it was in before the fire was not only material, but was the most persuasive, evidence of the amount of the loss for which defendants were liable under the policies. But, as we have seen, the jury were instructed to consider all of the other facts in evidence in finding the amount of the loss. This was as much as defendants were entitled to under the view of the law most favorable to them. McAnarney v. Newark F. Ins. Co., 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149. That case, which has probably gone furthest in minimizing reproduction cost as controlling evidence of value, held that it is for the jury to consider 'every fact and circumstance which would logically tend to the formation of a correct estimate of the loss.' That is what the jury were instructed to do and what we must presume they did in this case."

In *Third National Bank,* supra, at page 924, the Court notes that buildings independently of the land on which they rest, are not the subject of market sales, and therefore have no established market value which corresponds with their actual value, and goes on to say that the cost of repro-

ducing buildings as they were before the loss, actually approximates an expression of the actual value in terms of money. The Court then cites the case of Smith v. Allemannia Insurance Company, 219 Ill. App. 506, and other cases and authorities in support thereof. The Court then proceeds to say:

"While some of these authorities do say that the cost of replacement is not the measure of the loss but a limitation upon the recovery, all of them recognize that replacement cost, with physical depreciation for age, wear, and tear, is not only evidence of the amount of the loss, but is perhaps the most potent factor, among all the others in ascertaining the amount." (Citing authorities.)

In the last paragraph beginning on page 919, of 178 S.W.2d of *Third National Bank,* supra, the Court stated the Chancellor was correct in refusing to submit the five issues mentioned hereinabove, stating that they were only fragments of the determinative issue of the loss and were comprehended in that issue. It will be noticed that the Court in the paragraph now under discussion never modified or limited what it had previously stated and which we have pointed out above, to the effect that "actual cash value", "depreciation", and "cost of repair and replacement" were factors to be considered and were properly submitted to the jury under correct instruction. The Court thereafter in the opinion discussed at length other assignments and cited many cases throughout the country, from which lengthy discussion the plaintiffs have lifted out the paragraph quoted hereinbefore and contend it is a recognition by Tennessee of a replacement-without-depreciation rule.

The plaintiffs failed to cite or mention the case of Newark Fire Insurance Company v. Martineau, 26 Tenn.App. 261, 170 S. W.2d 927 (1943), wherein the Court said:

"What constitutes actual cash value, as specified above, depends 'upon the nature of the property insured, its condition and other circumstances existing at the time of loss.' 29 Am.Jur. p. 890, § 1184. If the value is to be arrived at by replacement or reproduction cost then the age or condition before loss of the property destroyed should be considered and a proper deduction made for depreciation or deterioration. In trying a case like the instant one the jury should be instructed along the line above suggested."

In *Newark Fire,* although the dwelling was a complete loss, the valued policy statute did not apply because the fire occurred within ninety days after the policy was written and before the insurer inspected the building. Accordingly, since the valued policy statute did not apply, the question of actual cash value was before the court. *Newark Fire* was decided by the Tennessee Court of Appeals, Eastern Section, on *March 11, 1943*; certiorari denied by the Supreme Court on *May 8, 1943*.

*Third National Bank,* relied upon by plaintiffs, was decided by the Tennessee Court of Appeals, Middle Section, *July 10, 1943*; certiorari denied by the Supreme Court on *November 20, 1943*. *Newark Fire* is not referred to by the court in *Third National Bank* and there is nothing whatever to be found in the opinion in *Third National Bank* which indicates any intention on the part of the Middle Section of the Court of Appeals to overrule the holding of the Eastern Section in *Newark Fire*. The opinion in *Newark Fire* reversed the trial court but for an error in the charge not in anywise relating to any question of depreciation.

We are of the opinion that the action of the Court of Appeals in *Third National Bank,* in affirming the Chancellor after the Chancellor had charged the jury to take the depreciation into account, does not overrule, but, on the other hand, supports *Newark Fire,* wherein the same Court, Eastern Section, specifically held that depreciation should be deducted from replacement cost.

A fire insurance contract is a contract of indemnity. Its purpose is to reim-

burse the insured; to restore him as nearly as possible to the position he was in before the loss. The replacement-less-depreciation rule and the broad evidence rule operate to accomplish indemnity.

The application of a replacement-without-depreciation rule, as contended for by plaintiffs, would frequently reap a profit for the insured, although it could result in a loss. Exhibit 3 to the complaint indicates that plaintiff Braddock's roof was 15 years old at the time of loss and that a new roof would cost $247.00.

Obviously, the "actual cash value" of the old roof, which was 15 years old, must have been considerably less than the cost of a new one. If he should recover the cost of a new roof, as contended for, he would have made a profit on the loss. The ends of indemnity would not have been served. The question of whether *depreciation could be considered* in determining actual cash value was not an issue for decision by the Court of Appeals in *Third National Bank*. As we have above pointed out, it was properly submitted to the jury along with all other factors under proper instructions which the Court of Appeals approved.

The plaintiffs, in the supplemental brief filed after argument before this Court, say this:

"The plaintiffs hereby state unequivocally that in this class action they seek to set aside the settlements entered into by members of the class *only insofar as such settlements contain a deduction for depreciation.* The plaintiffs seek absolutely no re-negotiation or litigation of costs of repair which have been agreed to by members of the class."

This statement again reiterates the contention of the plaintiffs that, in determining actual cash value, the law in Tennessee does not permit a deduction for depreciation. With this, we do not agree, and, as we have pointed out above, the decision in *Third National Bank,* supra, approved the allowance of depreciation, and that part of the opinion relied upon by the plaintiffs must be regarded as dictum.

The judgment of the trial court in dismissing the action will be affirmed and, having arrived at this conclusion, it will not be necessary for us to consider the defendants' other assignments going to the Chancellor's holding that the cause could be maintained as a class action.

We assess the costs against the plaintiffs.

DYER, C. J., and CHATTIN and Mc-CANLESS, JJ., concur.

HUMPHREYS, J., concurs in separate opinion.

HUMPHREYS, Justice (concurring).

I agree that where the contract of insurance specifies that depreciation is a factor to be taken into consideration in determining loss, that it should be taken into consideration. So, I concur in the result reached by the majority, that the class action cannot be maintained.

The action is predicated on the proposition that, as a matter of law, depreciation is not a factor to be taken into consideration. Since contracts must be enforced as written, depreciation is a factor where this is stipulated.

My concern about the opinion is that it may be read as excluding proof of the cost of repairs as a means of proving a partial loss. I have concluded it does not do this, even though the opinion holds Judge Felts' statement in Third National Bank v. American Equitable Ins. Co., 27 Tenn.App. 249, 178 S.W.2d 915 (1943) is dictum.

As dictum, it may not be adequate to establish, as a matter of law, that depreciation is not a factor in fixing loss, but this does not reduce the utility of this proposition in a suit to recover on a policy.

Mention should also be made of the fact that the opinion in this case does not rule out the factor of *appreciation* in value, for which the insured has paid an increased premium.

Limited, as I read the opinion to be, to the proposition that depreciation is not ruled out of consideration, as a matter of law, I concur.