**BARD'S APPAREL MANUFACTURING, INC., Plaintiff–Appellee,**

v.

**BITUMINOUS FIRE AND MARINE INSURANCE COMPANY, Defendant–Appellant.**

No. 87–5062.

United States Court of Appeals, Sixth Circuit.

Argued March 21, 1988.

Decided June 16, 1988.

Kenneth R. Starr (argued), Luther, Anderson, Cleary and Ruth, Nora A. McCarthy, Pamela A. McNutt, Kent L. Booher, Chattanooga, Tenn., for defendant-appellant.

Frank Van Cleave, III (argued), Tullahoma, Tenn., for plaintiff-appellee.

Before LIVELY and GUY, Circuit Judges, and COHN, District Judge.[*]

COHN, District Judge.

Defendant, Bituminous Fire and Marine Insurance Company (Bituminous), appeals from a $131,250 judgment entered against it on November 24, 1986 in favor of plaintiff, Bard's Apparel Manufacturing, Inc. (Bard's), as a consequence of a property damage and business interruption loss incurred by Bard's due to vandalism on August 10, 1985. A jury found in favor of Bard's as follows: $75,000 as compensation for contents loss; $50,000 for business interruption loss; and $6,250 (5%) as a bad faith penalty under Tenn.Code Ann. § 56–7–105.

On appeal Bituminous presents five issues for review:

---

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Whether the district court erred in denying its motion for summary judgment predicated on its demand for an appraisal of the loss made less than 30 days after Bard's presented a Sworn Statement in Proof of Loss along with Bard's filing of suit immediately following the demand;

2. Whether the district court erred in denying its motions for partial summary judgment and directed verdict on the bad faith penalty issue where Bard's made no formal demand for payment in a sum certain and filed suit less than 40 days after Bituminous received the Sworn Statement in Proof of Loss;

3. Whether the district court erred in its jury instruction on the measure of damages for contents loss when it defined the measure in terms of the "difference in the fair market value of the property immediately before the vandalism and immediately after", with a ceiling of the cost to repair or replace, where the insurance policy stated: "actual cash value at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss";

4. Whether the district court erred in failing to direct a verdict as to the duration of time during which Bard's was entitled to receive business interruption loss payments (six weeks at a stipulated loss of $7,485 per each 30 days) and further erred in its jury instruction on the measure of damages when it told the jury to take into consideration, in determining the length of time it would have taken Bard's to reenter business, "Bard's financial condition"; and

5. Whether the district court erred in denying Bituminous's post-trial motion to amend the judgment to reflect a credit for the $250 deductible provided by the insurance policy.

For the reasons which follow, we affirm the district court's denial of summary judgment on the appraisal issue; reverse the district court's denial of directed verdict on the bad faith penalty issue; affirm the district court on its jury instruction on measure of damages for contents loss; reverse the district court on its jury instruction on business interruption loss; and reverse the district court on the $250 deductible issue. Bituminous is entitled to a new trial on the issues of business interruption loss and credit for the deductible under the insurance policy. Because the bad faith penalty issue is removed from the case, on remand the district court is entitled to give consideration to an award of prejudgment interest.

## I.

On August 10, 1985 Bard's, an apparel manufacturer, suffered extensive loss to its machinery and equipment as a consequence of vandalism. Bard's machinery, for the most part, consisted of industrial sewing machines. At the time of the loss, Bard's was covered by a policy of insurance issued by Bituminous for loss by vandalism to contents of the business premises, not to exceed $208,000, and for any resulting business interruption, not to exceed $50,000. Since Bard's operated in a rented building and did not own the raw materials involved in its manufacturing operations, its contents loss was limited to machinery and equipment.

On August 11, 1985 Bard's orally notified Bituminous of its claim but did not state a sum certain. Shortly after the notice to Bituminous, Southern Sewing Supply, at Bard's request, examined the damaged sewing machines and equipment and gave Bard's a repair estimate of $34,252, sent to Bituminous, which essentially concerned work on the sewing machines. The repairs would take six weeks to complete.

Because Bard's, prior to the vandalism, had filed for reorganization under Chapter 11 of the Bankruptcy Act, Bituminous was uncertain as to who to pay. Also, there was no agreement between the parties in the Fall of 1985 as to the amount of the business interruption loss.

On November 25, 1985 Bituminous filed a complaint of interpleader in the Bankruptcy Court for the Eastern District of Tennessee that named Bard's and two of its creditors as defendants and stated in part:

Complainant has agreed with its insured that the amount payable under the contents loss portion of the policy is $32,-251.03 and said sum is now due and payable.

The complaint requested that the defendants settle between themselves their respective rights to the $32,251.03 and that Bituminous be discharged from all liability under the contents loss portion of its policy.

The bankruptcy proceeding was subsequently dismissed without objection on December 26, 1985, apparently mooting the interpleader action. In January of 1986 Bituminous issued two checks to Bard's, one for $32,251.03 to cover the contents loss and another for $18,000 to cover the business interruption loss. Because the checks included Bard's attorney and a creditor as named payees in addition to Bard's, the checks were returned to Bituminous.

On February 18, 1986 Bituminous received from Bard's a Sworn Statement in Proof of Loss in the amount of $75,000 as the actual cash value of its contents loss and $50,000 as its business interruption loss. On March 11, 1986, after Bard's had advised Bituminous of its intention to file suit, Bituminous made a demand for appraisal.

Bard's filed suit on March 20, 1986. Pretrial, the parties stipulated that the monthly loss for business interruption was $7,485. The district court denied Bituminous's motion for summary judgment on Bard's failure to participate in an appraisal, stating in the order denying reconsideration of the issue:

it is evident that the demand for an appraisal was made very late in the game; that an appraisal at this time would be meaningless because plaintiff no longer owns the damaged equipment; and that equity requires a finding that an appraisal, as a condition precedent to recovery,

has been waived by the defendant's conduct.

Also pretrial, the district court granted Bituminous's motion to eliminate the claims for punitive damages from the case, leaving to the jury the issue of a bad faith penalty under Tenn.Code Ann. § 56–7–105.

The testimony at trial, at best, was confusing. In addition to the matters described above, it essentially went as follows:

Aaron Bailey, the principal of Bard's, testified as to the vandalism, the damage to the sewing machines and the interruption in Bard's business. Bailey also expressed the opinion that the before and after value of the sewing machines was $100,000 and $18,000, respectively, and that it would have taken eight to nine months for Bard's to reenter the business and that Bard's sold the sewing machines, or what was left of them, in the interim. Bailey further described his rejection of the two checks received from Bituminous in January of 1986. Finally, Bailey described his repeated efforts to get Bituminous to make proper payment on the contents loss.

Bard's also offered the opinion testimony from persons familiar with the sale and repair of sewing machines to the effect that the sewing machines had a fair market value of between $100,000 and $200,000 before the vandalism and that to replace them would cost $142,000.

An adjustor for Bituminous testified that the estimate given by Southern Sewing Supply was intended to establish the cost of repairing the sewing machines to put them into good working order and that the work would take six weeks. A representative of Southern Sewing Supply testified as to the completeness of its estimate and that it covered all the sewing machines owned by Bard's. A representative of Bituminous testified as to the company's concern about who to pay because of Bard's unstable financial condition.

Post-trial, the district court denied Bituminous's motion for a judgment notwithstanding the verdict or for a new trial, and denied Bard's motion to allow for prejudg-

ment interest on the ground that the bad faith penalty awarded subsumed it.

## II.

### A.

■ We review the denial of summary judgment on the appraisal issue by the same test used by the district court, *Hand v. Dayton–Hudson,* 775 F.2d 757, 759 (6th Cir.1985), and find no error in its decision. Under Tennessee law, an appraisal provision in an insurance policy is valid. *Hickerson v. German–American Ins. Co.,* 96 Tenn. 193, 33 S.W. 1041 (1896). However, as explained in *Hickerson:* "Any attempt on the part of either party to misuse or pervert the provisions of the policy as to an appraisal, so as to unreasonably delay an adjustment ... is a breach of good faith, and should be treated as a waiver of the condition...." *Id.* 33 S.W. at 1044. Here, the parties spent approximately six months discussing an adjustment of the loss without Bituminous requiring Bard's to submit a Sworn Statement in Proof of Loss, and Bituminous twice attempted to pay the loss without agreement by Bard's. In the interim, the insured property was disposed of so that any appraisal would have proceeded without the presence of a subject matter. It was only after notice of Bard's intention to file suit that Bituminous first attempted to invoke the appraisal provision of the insurance policy; the business interruption loss was not subject to appraisal in any event. Under the circumstances, we find that Bituminous not only waived its right to an appraisal as a condition precedent to suit, but also waited an unreasonable length of time to the prejudice of Bard's before demanding an appraisal. *See Hamilton v. Phoenix Ins. Co. of Hartford,* 61 F. 379, 390 (6th Cir.1894) (where time taken to demand an appraisal is so clearly unreasonable that there can be no room for doubt as to proper conclusion, question of reasonableness is one of law).

### B.

■ Tenn.Code Ann. § 56–7–105 provides that an insurer that refuses to pay a loss within 60 days after a demand has been made by the insured shall be liable to its insured, in addition to the loss and interest thereon, for a sum not exceeding 25% of its liability for the loss, provided the refusal to pay was not in good faith and the trier of fact finds that the insured incurred additional expense because of the refusal. This additional liability is measured, in the discretion of the trier of fact, by the additional expense incurred by the insured. As the statute is interpreted by the Tennessee courts, before there can be a recovery of the penalty there must be a refusal to pay only after a formal demand has been made by the insured, and the statute, being penal in nature, must be strictly construed. *Palmer v. Nationwide Mut. Fire Ins. Co.,* 723 S.W.2d 124, 126 (Tenn.Ct.App.1986); *Walker v. Tennessee Farmers Mut. Ins. Co.,* 568 S.W.2d 103, 106 (Tenn.Ct.App.1977). As explained in *Palmer:*

[D]elay in settling a claim does not constitute bad faith when there is a genuine dispute as to value, no conscious indifference to the claim, and no proof that the insurer acted from "any improper motive." [citing *Johnson v. Tennessee Farmers Mut. Ins. Co.,* 556 S.W.2d 750, 752 (Tenn.1977) ].

723 S.W.2d at 126. An early decision of this court is to the same effect. *See Mutual Reserve Fund Life Ass'n v. Tuchfeld,* 159 F. 833, 846 (6th Cir.1908).

Here there is simply no evidence that Bituminous deliberately delayed adjustment of the loss or was consciously indifferent to Bard's interests. Indeed, it was Bard's who did not accept Southern Sewing Supply's repair estimate and Bituminous was legitimately uncertain as to whom the loss checks should be paid because of Bard's financial condition. That the payment was delayed and ultimately had to be resolved in court was as much the fault of Bard's as of Bituminous. We find that there was insufficient evidence to allow for a jury decision on the bad faith penalty issue.

Since the district court declined to consider Bard's right to prejudgment interest be-

cause of the bad faith penalty awarded by the jury, on remand the district court should consider whether or not Bard's is so entitled. See Tenn.Code Ann. § 47–14–123.

### C.

■ As to the measure of damages for contents loss, Bituminous's objection is limited solely to the language of the jury instruction. The district court instructed the jury as follows:

Now if the damage has been repaired, or is capable of being repaired, so as to restore the property to its fair market value immediately before the vandalism, then the measure of damages is the cost of such repair.

Now, if the damage has not been repaired or is not capable of being repaired so as to substantially restore the property to its fair market value as it existed immediately before the occurrence, then the measure of damages is a difference in the fair market value of the property immediately before the vandalism and immediately after it.

Now in no event shall this exceed the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, nor in any event, should it be more in [sic] the interest of the named insured in the property.

Now, you should fix the value based solely on the evidence presented in this trial.

The insurance policy provision regarding damages for contents loss reads:

actual cash value at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss. . . .

Bituminous argues that the instruction was too restrictive in failing to tell the jury that it should consider "all relevant factors in arriving at its determination" and take into consideration, inter alia, replacement cost, repair cost, depreciation, age and use of the sewing machines. Bituminous cites as authority for this proposition Braddock v. Memphis Fire Ins. Corp., 493 S.W.2d 453 (Tenn.1973), where the Supreme Court of Tennessee stated:

A fire insurance contract is a contract of indemnity. Its purpose is to reimburse the insured; to restore him as nearly as possible to the position he was in before the loss. The replacement-less-depreciation rule and the broad evidence rule operate to accomplish indemnity.

Id. at 459–60. However, Braddock involved damage to a roof, not readily replaceable machinery as is the case here. This distinction was clearly pointed out in Clift v. Fulton Fire Ins. Co., 44 Tenn.App. 483, 315 S.W.2d 9 (1958), where the court of appeals stated:

The phrase "the actual cash value", in the law of insurance as well as in the law of damages, may mean "market value", or the more elastic standard of "value to the owner". If the goods are readily replaceable in a current market, "market value" is the measure; but if there is no market, or if the market value is inadequate, the proper measure is the "value to the owner", or the loss he suffers in being deprived of the goods.

Id. 315 S.W.2d at 11. While the evidence of the value of the sewing machines at trial, though contradictory, was rather thin, and it is somewhat difficult to find in the testimony a rationale for the jury's verdict, we are not persuaded that the jury was misled by the instruction or that an instruction as proposed by Bituminous would have led to a different result. Each party had ample opportunity at trial to support its figure on the loss and argue an amount to the jury. As instructed, the jury certainly could come to a proper conclusion as to the value of the sewing machines in the market before the vandalism and as damaged machines afterwards. See Cincinnati Fluid Power, Inc. v. Rexnord, Inc., 797 F.2d 1386, 1391 (6th Cir.1986) (when jury instructions are challenged, reviewing court must determine if instructions, taken as a whole, fairly and adequately submit relevant issues to jury).

### D.

With regard to business interruption loss, the insurance policy reads:

the actual loss sustained by the insured resulting directly from necessary interruption of business, but not exceeding the reduction in earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed commencing with the date of such damage or destruction.

The parties obviated any need to compute the loss to Bard's of being shut down by stipulating pretrial that the monthly loss was $7,485, leaving only the length of time of the shut-down as an issue at trial. In this regard the district court instructed the jury:

Bituminous points out that under the contract of insurance, it is only liable for business interruption loss for the length of time required in the exercise of due diligence and dispatch to rebuild, repair or replace the damaged or destroyed property.

And in deciding how much money to award Bard's for its business interruption, you should determine from the facts presented in this case, how many months it would reasonably have required Bard's to re-enter the business through the exercise of due diligence, taking into consideration all of the circumstances such as the extent of damage suffered and Bard's financial condition.

The evidence at trial as to length of time necessary for Bard's to reenter the business was in conflict. The testimony from Southern Sewing Supply was to the effect that it could have had the sewing machines in good order in two-and-a-half months, while Bailey testified that it would have taken him eight to nine months to reenter the business. In his testimony Bailey repeatedly complained of the difficulties Bard's faced in reentering the business because Bituminous failed to make prompt payment of the loss; this certainly had an influence on the jury.

In *Beautytuft, Inc. v. Factory Ins. Ass'n,* 431 F.2d 1122, 1124 (6th Cir.1970), a case arising in the Eastern District of Tennessee but interpreting the law of Georgia, we held that under substantially similar contractual language, a theoretical, as contrasted to actual, replacement time was the standard to be used in computing a business interruption loss. We said particularly:

It seems obvious to us that the appellants wanted a standard of potential replacement time which was amenable to computation in advance and which was not subject to vagaries like owner indecision, strikes, or failure of lease negotiations which might affect the actual rebuilding time.

*Id.* at 1125. Applying similar reasoning, the Court of Appeals for the Eighth Circuit in *Hampton Foods, Inc. v. The Aetna Cas. & Surety Co.,* 843 F.2d 1140 (8th Cir.1988), *earlier appeal,* 787 F.2d 349 (8th Cir.1986), stated that the theoretical replacement time was also not subject to "any period of delay caused by other obstacles to restoration such as [the insured's] alleged lack of due diligence or poor financial condition." 843 F.2d at 1143. However, in *Hampton Foods* the court of appeals did allow for an extension of the theoretical replacement time for a reasonable period for any delay in the insured's ability to reenter business that was due to the insurer's unreasonable failure to timely perform its duties under the policy. *Id.; see also, Omaha Paper Stock Co. v. Harbor Ins. Co.,* 445 F.Supp. 179 (D.Neb.1978), *aff'd,* 596 F.2d 283 (8th Cir.1979).

Neither party points to any Tennessee authority on point and we have found none; thus, we have no reason not to apply the rule as stated in *Beautytuft* and *Hampton Foods.* By allowing the jury to take into consideration "Bard's financial condition", the district court erred. So instructed, the jury had the right to measure the time it would have taken Bard's to "re-enter the business" by a circumstance unique to Bard's, i.e., its poor financial condition,

**252**

which was neither "amenable to computation in advance", nor due to Bituminous's misfeasance of any duty under the policy.

Bituminous is entitled to a new trial on the issue of business interruption loss. While the Southern Sewing Supply repair estimate seems fairly conclusive to us, Bard's is still entitled to dispute the estimate by objective evidence of a need for a longer period of time for repair. This longer period of time may include consideration of the effect of Bituminous's failure to adjust the loss within a reasonable time, coupled with an appropriate instruction. *See Hampton Foods*, 843 F.2d at 1143.

### E.

The last issue for our consideration involves the $250 deductible provided by the insurance policy. The district court denied Bituminous's post-trial motion for a $250 credit against the amount found due by the jury on the ground that during the trial Bituminous failed to make an issue of it.

In *Union Planters Corp. v. Harwell*, 578 S.W.2d 87, 94 (Tenn.Ct.App.1978), the court of appeals held that where the insurance policy was in evidence (the situation here) and plaintiff never asserted that the deductible clause was inapplicable (also the situation here), the defendant was under no duty to allege the deductible clause as an affirmative defense and the trial judge therefore did not err in granting a remittitur in the amount of the deductible.

In *Hendry v. United Services Automobile Ass'n*, 633 S.W.2d 466 (Tenn.Ct.App. 1981), an automobile insurance policy case, the trial court's decision on damages was reversed because of an error in the manner of computation. Because the insurer had failed to introduce the insurance policy into evidence, the court of appeals held that in determining the insurer's liability, it was necessary to take proofs on the amount of the deductible, and stated:

> [T]he plaintiff should receive the full benefits afforded to him under his contract and the insuror-defendant should receive any and all credits afforded it by the same contract.

*Id.* at 469.

The same principle applies here. Since there must be a new trial on the issue of business interruption loss, Bituminous will have an opportunity to argue to the jury its right to the $250 deductible against such loss.

For the foregoing reasons, we AFFIRM in part, REVERSE in part and REMAND for a new trial on the issues of business interruption loss and the deductible.